[Civ. No. 16043.  First Dist., Div. Two.  Dec. 17, 1954.]

MARY A. KELLER, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation) et al., Appellants.

Donahue, Richards, Rowell & Gallagher and George E. Thomas for Appellants.

Joseph F. Rankin and M. F. Hallmark for Respondent.

KAUFMAN, J.—Defendants appeal from a judgment for damages entered against them after jury verdict in the sum of $18,000 for personal injuries sustained by plaintiff Mary Keller when she was allegedly struck by an interurban train of defendant Key System Transit Lines in the city of Berkeley near the point where defendants' tracks cross Ashby Avenue.

On the date of the alleged accident, March 15, 1952, a single track was being used for both northbound and southbound trains. Northbound trains stopped for passengers on the south side of Ashby Avenue, while southbound trains stopped on the north side of this avenue. North of Ashby, and paralleling the track on the east is a curbing. East of the curbing is a paved roadway used by northbound vehicular traffic. Gaps occur at regular intervals in the curbing, and at these points the curbing curves toward the track and the area to the track is completely paved. The eastern rail of the track is 4 feet 6 inches from the parallel curbing; the track gauge is 4 feet 8½ inches; and the overhang on each side of the track of Key System's trains is 22 inches.

All of the witnesses, except plaintiff Mary Keller, who had no recollection of the happening of the accident, agreed that the train stopped before it crossed Ashby Avenue. Plaintiff was waiting to take the southbound train to San Francisco, and had never caught a train at this place. She was standing in the third gap or "divider" north of Ashby, and had waited five or ten minutes, looking to the north. She did not remember walking, moving or facing south. She thought she had been standing about a foot from the track, but had no recollection of that fact. On cross-examination she stated that she was standing as close as she could be to an imaginary line extending the curbing across the gap.

A passenger on the train, Mr. Humpert, was called as a witness by plaintiff. He had first observed plaintiff standing in the second gap north of Ashby at the time the train was starting up from its stop south of Ashby. He noticed that

she was facing north with her back to the train and that she never moved. Her feet were about 16 inches from the nearest rail. Plaintiff disappeared from his vision just before the front end of the train got to her. His vision was then blocked by the curved corner of the car. He felt a jar and heard a woman scream. Mr. Humpert stated that the speed of the train increased from the time it had made the stop at Ashby until after it passed the plaintiff. It then came to a gradual stop. He at no time heard any signal from the train.

The motorman Reaves testified that his view was unobstructed and he saw plaintiff when the train was two or three blocks south of Ashby, but began to watch her continuously from the time he reached the center of Ashby Avenue, because he realized she was in a position of danger. He stated that he sounded his gong from the stop until he neared plaintiff, and blew the whistle in the north crosswalk of Ashby. He saw that plaintiff was facing north, and that she never moved from where she was standing in line with a continuation of the curbing. He felt that he could pass her with a clearance of a foot. The speed of the train was between 5 and 6 miles per hour until the front of the train passed plaintiff, at which time he released the air pressure so that the speed increased to 15 or 20 miles per hour. He then looked back to the right and saw a woman lying in the street and brought the train to a gradual stop. He had seen her when the train was less than a foot from her, and at that point the train obscured his vision. He did not see the train hit plaintiff. He did not know if there was an impact between plaintiff and the train, and denied that he knew that the train had struck her.

The witness Niculescu, a passenger on the train, did not see plaintiff before or after the accident. He stated that he heard the train's horn as it started on the south side of Ashby. He heard a noise near the door behind him. After the train stopped he saw a green automobile traveling in the same direction as the train, and it also came to a stop.

After the accident, plaintiff was lying in Adeline Street, 26 feet north of the point of impact which was established by scuff marks of plaintiff's shoes on the pavement. The front of the train when it stopped was 162 feet north of plaintiff.

Plaintiff alleged negligence of defendants in operation of the train and maintenance of their station. Defendants denied these allegations and pleaded contributory negligence.

Appellants claim error in the admission of the testimony

of Parker, a police officer who had taken a report of the accident from the motorman, Reaves. Over objection the officer was allowed to testify that he had asked Reaves the following question and received the following answer:

"Q. Where was the woman when you first saw her when she was struck by the train?

"A. You are putting me in an awful spot. I have given you all the information I have been instructed to give by my employers and I greatly appreciate it if you would ask them for details. My hands are tied. You can understand my position as well as I can understand yours."

This conversation was introduced by respondent for the purpose of attempting to prove that Mr. Reaves knew that the train hit the woman, and hence would tend to impeach his testimony that he did not know that the train struck her, and that she was in the clear as the train approached. Appellants emphasize the fact that the question was asked by a police officer in the course of an official investigation, and that the situation is not similar to those cases in which a spontaneous exclamation or accusation is made by a third party at the scene of the accident which it would be natural for the party to deny if it were not true. (See *Kohlhauer* v. *Bronstein*, 21 Cal.App.2d 4 [67 P.2d 1078]; *Baldarachi* v. *Leach*, 44 Cal.App. 603 [186 P. 1060].) They say that Reaves had given the police officer all the information that he was required to give under section 482 of the Vehicle Code, and that he was under no duty, legal or moral, to answer the question. ▮ Although it is true that he did not have a duty under that section, if it should be applicable to this type of case, to answer the question, nevertheless his refusal to give information when asked a question undoubtedly making an accusation that the woman was hit by the train, is subject to the inference that he would not answer it because he knew his employers' train was involved. It is certainly unreasonable to infer that his company had instructed him not to make known to the police that it was not involved in the accident! We cannot reasonably infer that the company rules require employees not to give information to the police if they are witnesses to an accident or a crime in which they are not themselves involved. ▮ The basis of the rule on admissions made in response to accusations is the fact that human experience has shown that generally it is natural to deny an accusation if a party considers himself innocent of negligence or wrongdoing. (See *People* v. *Simmons*, 28

Cal.2d 699, 762 [172 P.2d 18].)  True there is no legal duty to make such response.  We do not consider the fact that the accusation was made by a police officer significant enough to make a different rule applicable to such a case.  While respondent has found no California case where the accusation was made by a police officer, she has found a Virginia case, *Sanders* v. *Newsome,* 179 Va. 582 [19 S.E.2d 883], in which an admission by the silence of defendant when accused by plaintiff, in the presence of a police officer was held admissible in evidence in a suit by plaintiff for personal injuries.  Another case in which an admission by silence in the presence of a police officer was held admissible is *Popkin* v. *Goldman,* 266 Mass. 531 [165 N.E. 655].

The case of *Henderson* v. *Northam,* 176 Cal. 493 [168 P. 1044], cited by appellants, is not in point, for in that case the alleged admission was held inadmissible because there was no proof that the defendant either heard or understood the statement.  Appellants have argued that the question asked here was confusing, that it was compound and would have been objectionable if asked in court, and that no one could clearly understand it.  ▉▉▉  While it is true that the question is not clear as to whether the officer sought to know when the motorman first saw the woman or first saw her after the accident occurred, one thing that is very clear about the question is that it makes the accusation that the train struck the woman.  Reaves had answered numerous questions put to him, and it is reasonable to assume that if he did not understand the meaning of this question, he would have so stated, instead of replying as he did.

Appellants cite cases from other jurisdictions in which admissions have been held to be inadmissible. (*Hall Motor Freight* v. *Brookings Montgomery,* 357 Mo. 1188 [212 S.W.2d 748, 2 A.L.R.2d 1292] ; *Masterson* v. *St. Louis Transit Co.,* 204 Mo. 507 [103 S.W. 48] ; *Hill* v. *Missouri Packing Co.,* (Mo. App.) 24 S.W.2d 196; *Loewenherz* v. *Merchants & M. Bank,* 144 Ga. 556 [87 S.E. 778, Ann.Cas. 1917E 877] ; *Barnhart* v. *Martin,* 327 Ill.App. 551 [64 N.E.2d 743].)  Many of these cases involve attempts to introduce in personal injury suits admissions by refusal to testify at coroner's inquests, grand jury proceedings or in justice court on the ground that the answer might incriminate the party.  Many of these jurisdictions base this rule on the theory that to allow such evidence would tend to destroy the constitutional privilege against self-incrimination.  However, in California, it is the rule that

a party may be asked if he has not previously refused to testify at a coroner's inquest on the ground of his privilege against self-incrimination. In *Nelson* v. *Southern Pac. Co.,* 8 Cal.2d 648 [67 P.2d 682], such a question was held proper for impeachment purposes since the claim of privilege gives rise to an inference bearing upon the credibility of the witness' testimony that he was not negligent. Even in criminal cases in this state this type of admission is allowed to impeach the credibility of a witness. (See *People* v. *Simmons,* 28 Cal.2d 699, 712-716 [172 P.2d 18]; *People* v. *Kynette,* 15 Cal.2d 731, 750 [104 P.2d 794]; *People* v. *Graney,* 48 Cal. App. 773 [192 P. 460].) In *People* v. *Graney,* the admission was allowed in evidence even though defendant stated that his counsel had advised him not to talk.

It is our view that the admission which could be inferred from the evasive answer of appellants' motorman to the police officer's question was properly admitted in evidence.

█ Appellants contend that error was committed in instructing the jury as follows:

"The law presumes that Mary Keller, the plaintiff in this action, in her conduct, at the time of and immediately preceding the accident here in question, was exercising ordinary care and was obeying the law.

"These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof."

An instruction on last clear chance was also given, but the jury were cautioned that such doctrine might only be invoked if they should find that in the events leading up to the accident, both plaintiff and defendants were negligent.

Appellants concede that the instruction on the presumption of due care is proper where a party is unable to testify concerning his conduct at and immediately prior to the accident. (*Scott* v. *Burke,* 39 Cal.2d 388, 394 [247 P.2d 313].) They say that the only thing plaintiff did not know here was what hit her. And in *Scott* v. *Burke, supra,* it is held that the instruction is not proper if the testimony on behalf of the party compels the conclusion that it is "wholly irreconcilable

with the presumption.'' Appellants argue that the fact that plaintiff's testimony was irreconcilable with the presumption was the only justification for the court's instructing on last clear chance. However, as noted above, the court pointed out that such doctrine could only be applied if the jury should find that both plaintiff and defendants were negligent. They were not told that either plaintiff or defendants were negligent as a matter of law, or that they must apply the doctrine in this case.

There is nothing in respondent's testimony that is wholly irreconcilable with the presumption of due care, for she only testified to the fact that she was standing near the curb line, which was a position of safety, that she was looking to the north and thought she saw the southbound train coming on this track and was watching it. Because of her injury plaintiff had no memory of the happening of the accident, and hence no one can say with certainty just how far prior to the accident her memory extended.

In *Ford* v. *Chesley Transportation Co.*, 101 Cal.App.2d 548 [225 P.2d 997], it was said that ''the presumption may not be relied upon by a party who can and does produce complete and explicit evidence as to his conduct in the premises.'' It is clear that respondent did not produce such complete and explicit evidence by her own testimony. The witness Humpert testified in behalf of respondent, and he had her within his line of vision until just before the front of the train reached her. He stated that at no time did she move and that she was standing about 16 inches from the rail. The train's overhang was 22 inches. His testimony placed her in a position of danger at that time which was at least within a few seconds of the happening of the accident. He did not witness the happening of the accident, however, nor did he observe her conduct in those last few seconds. Therefore, it was not error to instruct on the presumption of due care in favor of respondent. Although, as noted, Humpert's testimony placed respondent within the overhang of the train, her position, if his testimony is believed, cannot be considered as making respondent guilty of negligence as a matter of law, since she was expecting only a southbound train for which she was attentively on the lookout. It was for the jury to say whether or not a person would be negligent in not keeping a lookout for northbound trains on the very same track, when they thought they saw a southbound train approaching.

Appellants cite numerous cases in which the instruction was not held proper. But they are all distinguishable from the case now before the court. In many of them the evidence on behalf of the party whose conduct was in question fully covered said party's conduct prior to and at the time of the accident. (*Clary* v. *Lindley,* 30 Cal.App.2d 571 [86 P.2d 920]; *Kelly* v. *Fretz,* 19 Cal.App.2d 356 [65 P.2d 914]; *Paulsen* v. *McDuffie,* 4 Cal.2d 111 [47 P.2d 709]; *Tuttle* v. *Crawford,* 8 Cal.2d 126 [63 P.2d 1128]; *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 P. 884]; *Lipman* v. *Ashburn,* 106 Cal.App.2d 616 [235 P.2d 627]; *Speck* v. *Sarver,* 20 Cal.2d 585 [128 P.2d 16].) In *Gioldi* v. *Sartorio,* 119 Cal.App.2d 198 [259 P.2d 62], the instruction was held to have been properly given, and in *Hill* v. *Ralph,* 117 Cal.App.2d 434 [256 P.2d 48], the judgment was reversed because the instruction had not been given. The case of *Verhaegen* v. *Guy F. Atkinson Co.,* 126 Cal.App.2d 442 [272 P.2d 855], which appellants cite because of its criticism of an instruction practically identical to that given here, is not at all similar to the instant case on the facts. The court stated that since plaintiff therein testified fully as to his acts and conduct immediately prior to and at the time of the accident there was no room for the presumption.

We believe that the instruction was properly given in the instant case, and that appellants were not prejudiced thereby.

We conclude that the judgment finds ample support in the record before us and accordingly it must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 14, 1955, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1955. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.