[Civ. No. 18251.   First Dist., Div. Two.   Jan. 26, 1961.]

URBAN H. ROBERTS et al., Appellants, v. THE PERMA-
NENTE CORPORATION (a Corporation), Respondent.

Augustus Castro, Cooley, Crowley, Gaither, Godward, Castro & Huddleson and Thomas A. H. Hartwell for Appellants.

Thelen, Marrin, Johnson & Bridges for Respondent.

SHOEMAKER, J.—Plaintiffs since 1942 have owned and resided in a home located in Los Altos approximately one mile to the north of a cement plant and quarry owned and operated since 1939 by defendant Permanente Cement Company. On December 29, 1954, plaintiffs brought this action to recover damages which they complain were suffered by them by reason

of the operation of the cement plant and quarry in such a manner that dust and other substances escaped therefrom, settled on their property, and not only physically damaged it but also deprived them of their use and enjoyment thereof.

The defendant's answer admitted the ownership and operation of the cement plant and quarry, but denied liability for any damage plaintiffs claim to have suffered, and particularly alleged that they were conducting their operation in an area zoned therefor, and that they hold a permit from Santa Clara County authorizing their activities in which they have reasonably and properly engaged.

The case proceeded to trial before a jury and a verdict was returned in favor of the defendant, and from the judgment entered thereon plaintiffs appeal. (The first count of the complaint sought an injunction. This phase of the case was tried by the court and judgment was rendered denying the injunction. This aspect of the action ended there.)

We do not recite the conflicting evidence as to the dust, wind currents, atmospheric conditions, the discoloration of brick and other matters at issue between the parties, for there is no dispute but that, depending upon which testimony was believed, a judgment in favor of either party would have been supported.

Respondent's plant was located in a zone which permitted its operation. It comes within the protection of section 731a of the Code of Civil Procedure which, subject to certain exceptions, generally provides that where a manufacturing or commercial operation is permitted by local zoning, no private individual can enjoin such an operation. It has been determined, however, that this section does not operate to bar recovery for damages for trespassory invasions of another's property occasioned by the conduct of such manufacturing or commercial use. (*Kornoff* v. *Kingsburg Cotton Oil Co.* (1955), 45 Cal.2d 265, 271 [288 P.2d 507]; *McNeill* v. *Redington* (1944), 67 Cal.App.2d 315, 319 [154 P.2d 428].)

The appellants argue that error has been committed by the trial court warranting reversal of the judgment by (1) the giving of certain instructions, (2) failing to submit to the jury the issue of exemplary damages, (3) admitting into evidence respondent's exhibit "L," and (4) the exclusion of certain evidence proffered by appellants.

The appellants first point out that in giving respondent's instructions numbered 2, 14, 15 and 19, the court erred in that it told the jury that in the absence of negligence

530

respondent was not liable for damages caused by a continuous trespass unless there was an *intent to harm* on the part of respondent. As we examine the instructions, we find no error in Instruction Number 2, for it merely told the jury that the factual issues for them to determine were whether respondent operated so as to intentionally or negligently invade appellants' property or rights therein[1]; Instruction Number 15 correctly stated that doing an act with knowledge at the time that there is a substantial certainty that it will result in entry of foreign matter on another's property is an intentional trespass[2]; Instruction Number 19 told the jury a use of land which inevitably causes loss to his neighbor is not in itself the basis of negligence[3], which is a correct statement of the law. Instruction Number 14, however, did tell the jury that there had to be either negligence or an "intent to cause damage or injury" for liability.[4] In other words, that to impose liability in the absence of negligence they would be required to find an "intent to harm." This is not the law. The doing of an act which will to a substantial certainty result in the entry of foreign matter upon another's land suffices for an intentional

[1]*Defendant's Instruction No. 2:* ''The factual issues which you, as jurors, are called on to determine can be generally stated as follows:
''First, did the defendant operate its cement plant and conduct its other activities at Permanente in such a manner as to intentionally or negligently invade plaintiffs' property or rights in property? . . .''

[2]*Defendant's Instruction No. 15:* '' An intentional trespass or invasion of another's property or rights in property consists in the doing of an act with knowledge at the time that the act is being performed and with knowledge that the act, as done, is such as will, to a substantial certainty, result in the entry of foreign matter on to another's property.''

[3]*Defendant's Instruction No. 19:* ''You are instructed that every man may use his own land for all lawful purposes to which such lands are usually applied, without being answerable for the consequences, provided he exercises ordinary care and skill to prevent any unnecessary injury to the adjacent landowner. It is not, therefore, necessarily negligence on the part of a landowner to make a use of his land which inevitably produces loss to his neighbor.''

[4]*Defendant's Instruction No. 14:* ''One who intentionally, recklessly, or negligently causes something to enter another's land is liable to the person possessing the land for any damage caused to the land and for any interference with the possessor's enjoyment of it.
''If you find from the evidence in this case that the defendant operated its cement plant so as to *intentionally cause damage or injury* or operated it in a careless or negligent manner and without the exercise of due care, so that plaintiffs suffered damage or injury as a direct result of this manner of operation, then defendant is liable for the damage or injury so caused. If, on the other hand, you find that defendant exercised due care in the operation of its plant and that its operations were conducted in a reasonable manner *and that it did not intentionally injure plaintiffs,* then there is no liability on the part of defendant toward the plaintiffs.'' (Emphasis supplied.)

trespass to land upon which liability may be based. (*Kornoff* v. *Kingsburg Cotton Oil Co., supra*; Rest., Torts, § 158.) It was error to instruct the jury that an "intent to harm" was required. (*Dandoy* v. *Oswald Bros. Paving Co.* (1931), 113 Cal.App. 570 [298 P. 1030].) The jury was correctly instructed that doing an act with substantial certainty of entry sufficed for recovery in Instruction Number 15 (*supra*, f.n. 2), and the question presented for our determination is whether the erroneous Instruction Number 14 (*supra,* f.n. 4), was prejudicial. The record discloses that some time after the jury had begun its deliberations, it returned to court and asked whether respondent could be liable for damages without negligence. The court repeated four of its instructions, namely, Numbers 14 and 15 already discussed, and appellants' Numbers 4 and 7.[5] Instructions Numbers 4 and 7 properly state the law. However, Number 7 cannot be reconciled with the directions given the jury in Instruction Number 14. The confusion of the jury is apparent from the question asked, and the answer of the court did not dispel the confusion.

Where the jury is both correctly and incorrectly instructed, and it cannot be determined from the record which of the conflicting instructions were followed in reaching the verdict, such constitutes prejudicial error, especially where, as here, the evidence is conflicting and the jury's confusion is apparent. (*Lane* v. *Pacific Greyhound Lines* (1945), 26 Cal. 2d 575, 586 [160 P.2d 21]; *Hobart* v. *Hobart Estate Co.* (1945), 26 Cal.2d 412, 447-449 [159 P.2d 958].) We are convinced that the giving of the erroneous instruction was prejudicially erroneous.

The appellants next contend that it was prejudicial error for the court to refuse to submit their proposed instruc-

---

[5]*Plaintiffs' Instruction No. 4:* "Where a corporation uses its property so as to infringe upon the rights of another, such infringement may constitute a trespass, as defined in my instructions. Where a corporation is guilty of committing a trespass in the use of its property, any person injured as a proximate result of such an infringement of his rights may recover damages from the corporation.

"The issue to be determined by you in this case is:

"Has defendant committed a trespass?

"If you answer the question in the negative, plaintiffs are not entitled to recover. But if you answer the question in the affirmative, you then must fix the amount of plaintiffs' damages and return a verdict in their favor."

*Plaintiff's Instruction No. 7:* "If you find that defendant has committed an intentional trespass, then whether defendant was negligent or not, is immaterial, because a lack of negligence cannot be a defense to an intentional trespass."

tions on exemplary damages to the jury. ▆▆ Such damages are recoverable only where the defendant has been guilty of oppression, fraud or malice, express or implied. ▆▆ Generally, the question of exemplary damages is for the trier of fact. (*Beckett* v. *City of Paris Dry Goods Co.* (1939), 14 Cal.2d 633, 639 [96 P.2d 122]; *Sheward* v. *Magit* (1951), 106 Cal. App.2d 163, 167 [234 P.2d 708].) ▆▆ Exemplary damages may be awarded where a trespassory invasion is done with an intent which is malicious. (*Griffin* v. *Northridge* (1944), 67 Cal.App.2d 69, 76 [153 P.2d 800].) ▆▆ Viewing the evidence in a light most favorable to the appellants, we do not find any of the prerequisites that would support an allowance of exemplary damages, nor is there any evidence from which they might reasonably be inferred; hence it was not error for the court to refuse to instruct thereon. (*Moore* v. *Pacific Coast Steel Co.* (1915), 171 Cal. 489 [153 P. 912]; *Davenport* v. *Stratton* (1944), 24 Cal.2d 232, 254 [149 P.2d 4].)

The appellants argue that the introduction of an exhibit entitled "Study, San Antonio Hills, Inc., Air Pollution Complaint, 1955-1956, by the Santa Clara County Health Department, Santa Clara County Air Pollution Control District," constituted prejudicial error in that the report was inadmissible hearsay containing conclusions and opinions. Part of the report was read into evidence. The report purportedly covers an investigation of cement dust in the surrounding area made at the request of residents therein. It reviews the operations at the cement plant and nearby Neary Quarry. It concluded that the dust falling on local roofs was more likely to be quarry dust than cement dust, and set forth statements allegedly made by Neary, manager of the quarry, to the effect that the operation there by the former owners was not proper and created excessive dust, as well as conversations of respondent operator as to the steps it was taking to reduce outflow of cement dust. The report advised that respondent had one of the best cement plants in existence with regard to low atmospheric discharges, although some dust was discharged.

▆▆ The preceding recitation of content shows the report clearly is hearsay, abounding in opinions and conclusions. The first question raised with regard to the report is whether it is excepted under Code of Civil Procedure, section 1920, as a public record. The Clerk of the Board of Supervisors for Santa Clara County brought the report to the court, and testified that it was part of the public records of the county.

But, to be excepted, the records must be made by an official pursuant to governmental duty. (*Pruett* v. *Burr* (1953), 118 Cal.App.2d 188, 201 [257 P.2d 690] ; *Reisman* v. *Los Angeles City School Dist.* (1954), 123 Cal.App.2d 493, 506 [267 P.2d 36].) The record is devoid of any evidence which indicates it was the duty of the county health department to investigate such alleged air pollution, or more important, record its findings pursuant to investigation. There is nothing in the Health and Safety Code, sections 24198-24341, dealing with Air Pollution Control Districts, which indicates the presence of such a duty. (See especially § 24260 [powers of control board] ; § 24212 [powers of district] ; § 24224 [duties of control officer].) Finding no duty on the agency to investigate or make this report, we conclude that it is not a public record within the meaning of Code of Civil Procedure, section 1920, and its introduction into evidence was error. Whether its admission was prejudicial we need not decide.

Appellants contend the court erred in excluding testimony relating to purported recommendations made by respondent's representatives to neighboring property owners with respect to using muriatic acid to remove dust encrustations on their property. Acid solution can be used to remove cement dust, and appellants contend such evidence would have been significant to show that the dust complained of had a cement origin, and that the conduct of respondent constituted an admission. The uncontradicted evidence at trial showed that any limestone dust was soluble in muriatic acid. Therefore, the evidence offered did not tend to show that the encrustations were cement dust, and respondent's conduct could not be an admission. The relevancy of evidence is tested by whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue. (*People* v. *Jones* (1954), 42 Cal.2d 219, 222 [266 P.2d 38].) A wide discretion is left to the trial judge in determining the relevancy and admissibility of evidence. (*Decter* v. *Stevenson Properties, Inc.* (1952), 39 Cal.2d 407, 420 [247 P.2d 11].) Since testimony of this character did not tend to prove the propositions of appellants, it was properly excluded.

Appellant Urban H. Roberts was asked if Mr. Stibolt, a representative of respondent, denied that there was cement dust on his property when appellant told him there was such a condition; the court sustained respondent's objection to this question. Appellants contend this was error;

534

they note that failure to deny an accusation may be treated as an admission. Such is true where it would be natural for an innocent party to make a denial. (*Keller* v. *Key System Transit Lines* (1954), 129 Cal.App.2d 593, 596 [277 P.2d 869].) The record, however, shows that Mr. Stibolt was the director of public relations for respondent, and knew nothing about the identification of cement dust. These factors indicate it would not be natural to expect him to make any denial of the statement made by Roberts. ■ Where circumstances do not indicate a party would be bound to deny a statement, conduct of the party in the face of the accusation has no effect, and it is not error to refuse to admit testimony regarding it. (*Perkins* v. *West* (1954), 122 Cal.App.2d 585, 591 [265 P.2d 538]; *Henshall* v. *Coburn* (1917), 177 Cal. 50, 53 [169 P. 1014].)

■ Mr. Garoutte, respondent's vice-president, was asked if other people had made claims with Permanente concerning dust as early as 1952; respondent's objection to this question was sustained. The appellants contend the questions were admissible as bearing on the question of respondent's knowledge as to the allegedly deleterious effect of its operations on property in the area, and appellants' property in particular. Assuming there was relevancy, the record indicates that the respondent's Mr. Stibolt testified at length with respect to such complaints which had been made to respondent. ■ Where there is considerable evidence regarding a fact, excluded evidence on the same fact could only be cumulative, and its rejection does not constitute error. (*Moore* v. *Marshall* (1940), 41 Cal.App.2d 490, 494 [107 P.2d 89].)

■ Appellants contend the court committed error in excluding the results of certain tests relative to the efficiency of respondent's precipitators. The tests were made prior to the time covered by appellants' complaint, and at a time when only four kilns were in operation. The question of the similarity of conditions, and the remoteness of tests, is one lying in the discretion of the court (*Miller* v. *Dollar Steamship Lines, Inc.* (1937), 19 Cal.App.2d 206, 214 [64 P.2d 1163]); where conditions are dissimilar, it is not error to exclude evidence as to tests. (*Collins* v. *Graves* (1936), 17 Cal. App.2d 288, 299 [61 P.2d 1198].)

■ Appellants' last contention is that the court committed error in excluding portions of a Mr. Dawson's deposition. The document purportedly contains admissions made in 1947 or 1948 by an agent of respondent, which ap-

pellants claim are binding upon respondent. These relate to recommended use of muriatic acid, and a statement that some dust was cement dust. The ruling was based upon remoteness of time. The question of admissibility of evidence in the face of an objection that it is too remote is usually left to the discretion of the trial judge (*People* v. *Arrangoiz* (1937), 24 Cal.App.2d 116, 118 [72 P.2d 789]), and there is no hard-and-fast rule as to the length of time. (*People* v. *Boggess* (1924), 194 Cal. 212, 235 [228 P. 448].) The evidence excluded referred to happenings which purportedly took place four or five years before occurrences forming the basis of this lawsuit, and at a time when respondent's operations were being carried on differently. The court did not abuse its discretion in excluding this evidence for remoteness.

Judgment reversed.

Kaufman, P. J., and Draper, J., concurred.

A peition for a rehearing was denied February 24, 1961.