[Civ. No. 26306. Second Dist., Div. Four. Mar. 13, 1963.]

CALIFORNIA VIKING SPRINKLER COMPANY, Plaintiff and Respondent, v. PACIFIC INDEMNITY COMPANY, Defendant and Appellant.

846

Anderson, McPharlin & Conners and Luther L. Jensen for Defendant and Appellant.

Miller, Swide & Casey and Keith W. Miller for Plaintiff and Respondent.

BURKE, P. J.—This is an action based on repudiation of an oral agreement alleged to have been made by defendant to pay $7,768.13 to plaintiff in consideration of the latter's dis-

missal of an action against a third party pending in a federal district court. The cause was tried and a jury gave its verdict for plaintiff. Thereupon defendant moved the court alternatively for judgment notwithstanding the verdict or a new trial. Both motions were denied and defendant noticed an appeal from the judgment entered pursuant to the jury's verdict and from the order denying said motions for judgment notwithstanding the verdict and new trial.[1]

The events preceding and surrounding the dispute are substantially as follows: On December 3, 1958, W. M. Wilson, doing business as Robinson and Wilson (Wilson), as general contractor, entered into a written contract with the United States of America for the construction of certain facilities at Vandenberg Air Force Base, Lompoc, California. Concurrently with execution of the contract, Wilson, as principal, and Federal Insurance Company, as surety, issued their bond pursuant to title 40, section 270b, United States Code (Miller Act) for the benefit of all persons supplying labor or materials used in the construction work.

On December 5, 1958, Wilson entered into a written contract with Elerding Plumbing, Inc. (Elerding), as subcontractor whereby Elerding agreed to do a portion of the work embraced in the general contract.

On December 31, 1958, Elerding, as principal and defendant Pacific Indemnity Company (Pacific) as surety, issued their subcontract bond in the penal sum of $55,000, whereby Pacific agreed to hold Wilson, as sole obligee under said bond, harmless from all loss or damage which Wilson might sustain by reason of the failure of Elerding to perform its contract or to pay in full all persons supplying labor or materials to Elerding for performance of the work described in its subcontract.

On December 30, 1958, Elerding and plaintiff Viking entered into a written contract whereby Viking, as subcontractor, agreed to supply labor and materials for the performance by Elderding of part of its contract with Wilson. Between January 12, 1959, and April 30, 1959, Viking supplied the labor and materials due under its contract with Elerding. The alleged value of these services is $32,640, of which $24,771.87 is conceded to have been paid. The remaining $7,768.13 is in dispute here.

[1] The order denying the motion for new trial is a non-appealable order.

On June 17, 1959, Viking gave written notice to Elerding that part of the amount due Viking was unpaid. A copy of said notice was sent to Wilson and is relied upon by Viking in its federal suit as constituting notice to Wilson of its claims as required by the Miller Act, *supra*. This notice does not inform Wilson of Viking's intent to look to him for payment of the claim asserted against Elerding.

On October 15, 1959, Elerding filed a voluntary petition in bankruptcy which contained a schedule of creditors including a claim by Viking in the amount of $8,340.

On November 10, 1959, Viking instituted suit in the United States District Court for the Southern District of California against Wilson and Federal Insurance Company to recover from them, by virtue of their bond given pursuant to the Miller Act, the claimed balance due of $7,768.13.

Based on evidence in the present suit, the following sequence of events occurred: On November 25, 1959, a summons and a copy of the complaint in the federal action were served on Wilson. On the same day James A. Gittinger, claims superintendent for Pacific, conferred with a representative of Federal Insurance Company and advised the latter Pacific would assume the defense in the federal action.

Mr. Alton T. Anderson, office manager of Viking, testified:

"The Witness: Mr. Gittinger called me and introduced himself as the attorney for the Pacific Indemnity Company, I believe, and said that he had a notice that approximately $7800 was owing the Viking Automatic Sprinkler Company.

"He asked me who our attorney was and I told him.

"He asked me if we would settle this thing 100 cents on the dollar or without attorney's fees, and I said I would.

"And he asked me also if we would get the papers ready for this, and I said I would have Mr. Garrie take care of the matter."

Mr. Garrie, plaintiff's attorney, testified he received a telephone call on December 4, 1959, from Mr. Gittinger and that the latter stated he had made a deal with Anderson, Viking's employee, to settle the case with Viking.

On December 18, 1959, Wilson filed his answer in the federal court. The case was set for pretrial. Mr. Garrie, attorney for Viking, testified that on January 5, 1960, he telephoned Mr. Gittinger and that during their conversation Mr. Gittinger indicated Pacific would not carry through with any settlement agreement.

Thereafter the instant action was filed on January 26, 1960. Other facts pertinent will be stated in connection with discussion of particular points raised on appeal.

We have concluded that whether or not defendant's agent Gittinger was authorized to bind defendant to the transaction sued upon was a question of fact which should have been presented to the jury. The court gave the following instruction:

"It is established that James Gittinger, who was handling the claims made against the bond of Pacific Indemnity Company, was acting as agent for the defendant Pacific Indemnity Company and within the scope of his authority at the time of the events out of which the alleged contract between California Viking Sprinkler Company and Pacific Indemnity Company resulted. Therefore, the acts and omissions of that agent were, in contemplation of law, the acts and omissions, respectively, of his principal, defendant Pacific Indemnity Company."

The basis for the court's instruction that Gittinger's authority was established, as a matter of law, is a stipulation in the joint pretrial statement which recites: "At all times material to the Complaint, James A. Gittinger was an agent and employee of Pacific Indemnity Company. The duties of James Gittinger at times material to the matter set out in the Complaint, encompassed the receipt, examination, negotiation, investigation, defense, and/or payment of fidelity and surety claims." If this were all that touched on the question of Gittinger's authority there would be justification for the premise of the court's instruction that this stipulation established the scope of Gittinger's authority. But it is not "all." In its answer the defendant, while admitting the agency of Gittinger, denied that he was acting within the scope of his authority so that an issue had been raised by the pleadings. Then we find the defendant, in the pretrial proceedings, reserving as an issue to be tried: "Whether or not the agent of plaintiff [*sic*] was authorized to enter into the agreement alleged by plaintiff." It can hardly be doubted that this was meant to make sure that the question that remained open was whether or not *defendant's* agent was authorized.

In any event the parties litigated the question as though it were at issue. When the president of the defendant was asked about the extent of Gittinger's authority an

objection was interposed, not on the ground that it was irrelevant to any issue, but on the sole ground that it called for his conclusion. He was permitted to answer and the jury should have been permitted to take his answer into consideration, for where the pretrial definition of an issue is not clear, (as here) the parties by their conduct at the trial may make it clear. See discussion in *Ragusano* v. *Civic Center Hospital Foundation,* 199 Cal.App.2d 586, 590 [19 Cal.Rptr. 118].

 The president testified that while Gittinger had authority to settle surety claims, that authority was limited in at least two respects: (1) that settlements of surety claims could be effected by him, as agent, only with the named obligee on the surety bond, and (2) such authority was limited to approximately $1,500 in amount, in the case of settlements. The dollar limit on this authority was only the estimation of a competent witness on the point, but was nonetheless proper evidence concerning the scope of Gittinger's authority.

 The existence of an agency relationship and the extent of the authority of the agent are questions of fact for the jury (*Thompson* v. *Machado,* 78 Cal.App.2d 870, 876-877 [178 P.2d 838]; *Mayers* v. *Litow,* 154 Cal.App.2d 413 [316 P.2d 351]), unless the evidence is susceptible of but one inference (*Seneris* v. *Haas,* 45 Cal.2d 811, 831 [291 P.2d 915, 53 A.L.R.2d 124]). In either event the burden of proving agency, as well as scope of the agent's authority, rests upon the party asserting the existence thereof and seeking thereby to charge the principal upon representations of the agent (*Aspen Pictures, Inc.* v. *Oceanic S.S. Co.,* 148 Cal. App.2d 238, 253 [306 P.2d 933]; *Wahyou* v. *Kiernan,* 145 Cal.App.2d 443, 445 [302 P.2d 638]). Thus, it is incumbent upon the party seeking to charge the principal for the acts of its agent to show (1) existence of the agency relationship, and (2) authority of the agent to bind the principal to the transaction upon which the action is brought.

 In the instant case, the pretrial stipulation satisfies the first requirement but the second was preserved as an issue to be tried. Defendant adduced evidence tending to show that Gittinger had exceeded his authority. On the other hand, plaintiff has not cited any portion of the record, either in its main case or on rebuttal, which tends to establish the extent of Gittinger's authority, although there are circumstances present in the case which might support a conclusion in favor of plaintiff on this point. In summary, the pleadings

and the evidence raise a question of fact respecting the scope of Gittinger's authority.

█ Each party to a lawsuit is entitled to have the jury instructed on all of his theories that are supported by pleadings and evidence, and it is incumbent on the court to instruct on all issues involved. (*Phillips* v. *G. L. Truman Excavation Co.,* 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].) █ The trial judge, where there is evidence to support a defense, may not arrogate to himself the determination of the issue adversely to defendant and by means of an instruction foreclose the jury from the determination of such issue. Such error is clearly prejudicial in any case where the evidence admitted in support of it, if believed, would support a verdict in favor of the complaining party. (*Phillips* v. *G. L. Truman Excavation Co., supra,* p. 806.) █ In the present case, defendant by its answer specifically denied that Gittinger was acting within the scope of his authority and preserved that contention at the time of pretrial. Evidence tending to support the defense was adduced on the trial. Under these circumstances, the court erred in taking this issue away from the jury and the judgment therefore must be reversed.

Since there must be a new trial of this matter, we shall pass upon and determine all the questions of law presented on this appeal which are necessary to a final determination of the case. (Code Civ. Proc., § 53.)

█ Defendant contends that certain instructions offered by it were improperly refused since without them the jury was enabled to predicate liability on the indemnity bond rather than the agreement of compromise. Of course, if this were the case the objection would be well taken. But the instructions offered by defendant would merely inform the jury that an indemnity bond is an agreement to hold one harmless from a loss occasioned by the conduct of another and that the person indemnified is not entitled to recover from the indemnifier until he sustains a loss by payment. These instructions do not intimate that recovery cannot be predicated on direct liability arising from the bond, which is the asserted ground of error. Rather, they inform the jury of the nature of the bond and affirmative circumstances which would create liability on the bond. This was a suit on an oral contract of compromise; this fact was adequately pointed out to the jury and the instructions offered would have been im-

material and would have confused the jury. They were correctly refused. However, on retrial, an instruction limiting the basis of liability to the compromise agreement would be proper should the trial judge determine the jury might otherwise misunderstand the true nature of the case.

Defendant next complains that it affirmatively appears on the face of the complaint that the action is barred by the statute of frauds. To support this point defendant claims the promise asserted here is a special promise to answer for the debt, default, or miscarriage of another which is required to be in writing (Civ. Code, § 1624; Code Civ. Proc., § 1973, subd. 2) and that since the complaint fails to show an exception as provided in Civil Code, section 2794, the action here must fail.

This is clearly a promise on the part of defendant to take over the debt of another. However, Civil Code, section 2794, provides certain exceptions to this rule. Subdivision (3) provides that "[w]here the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it cancels the antecedent obligation, accepting the new promise as a substitute therefor;" it is an original obligation of the promisor and need not be in writing.

Here the complaint alleges that the consideration moving from plaintiff is the dismissal with prejudice of the federal court action against Robinson and Wilson. The effect of such dismissal would be res judicata upon the claim asserted against Robinson and Wilson and would, in effect, cancel any obligation embraced in that action which might be owing from the latter to plaintiff. A judgment for plaintiff in the federal action would render defendant liable on its indemnity bond. Thus, plaintiff agreed to cancel the antecedent obligation asserted in the federal suit by dismissing that suit with prejudice and to accept Pacific's promise of compromise as a substitute therefor. "[A] new promise which discharges another obligation by novation, or one in which no obligation of the other exists or is contemplated, is necessarily original since there can be no debt of another." (*Parrish v. Greco*, 118 Cal.App.2d 556, 561 [256 P.2d 566].) Thus, the complaint does not fail to show an exception to the statute of frauds within section 2794 of the Civil Code.

Defendant also contends the court below erred in admitting evidence showing that it had established a reserve

on the potential liability which might grow out of the federal suit. The basis of this contention is that establishment of a reserve by an insurance company on a potential liability to the indemnitee has no relevance to a determination of whether or not a potential claim against the indemnitee has been compromised through settlement by the indemnitor. Defendant asserts and the evidence shows that establishment of a reserve in such a case is indicative only of the fact that a claim arising under its indemnity contract has been presented and that it is neither an admission of liability nor evidence of validity of the claim. However, as noted *infra,* the actual validity of the claim is not an issue in an action to enforce a compromise agreement.

While we agree with defendant's characterization of the nature of a reserve account, we cannot say its admission in evidence does not relate to a material issue presented for the jury's consideration. The existence of a potential claim is clearly relevant on the issue of whether or not a compromise agreement has been entered into. It shows that there is a claim which forms a basis upon which the alleged compromise has been reached and this becomes relevant and material when the existence of the compromise agreement is denied. "Evidence is relevant not only when it tends to prove or disprove the precise fact in issue, but when it tends to establish a fact from which the existence or nonexistence of the fact in issue can be directly inferred." (*Firlotte* v. *Jessce,* 76 Cal.App.2d 207, 210 [172 P.2d 710] ; see also *People* v. *Jones,* 42 Cal.2d 219, 222 [266 P.2d 38].)

 "A wide discretion is left to the trial judge in determining the relevancy and admissibility of evidence." (*Roberts* v. *Permanente Corp.,* 188 Cal.App.2d 526, 533 [10 Cal. Rptr. 519].) This evidence tended to prove a basis for plaintiff's contention that defendant had entered into the compromise agreement and it cannot be said the court below abused its discretion in admitting it. However, it should be noted that this evidence is cumulative in showing defendant's contractual obligation to Wilson. The indemnity bond was proof of the same fact except that establishment of the reserve shows that a claim had been asserted on the bond and knowledge of it brought home to defendant. On retrial, whether or not it is to be admitted should be independently evaluated in the light of progress of the trial at such time as

it is offered and, if admitted, carefully limited for the stated purpose in order to avoid any prejudice that might issue from misunderstanding of its true import.

Defendant claims the court should have instructed the jury that the cause of action alleged in the federal court suit was not, as a matter of law, a valid claim and that the court erred in refusing to grant a nonsuit on the ground the evidence failed to show such claim was valid. The basis for this assertion is that the Miller Act, title 40, section 270b, United States Code, requires notice to be given of intention to make a claim within 90 days from the last date materials or labor were supplied. Here, notice was given to Elerding of plaintiff's claim and a copy thereof was sent to Robinson and Wilson. Defendant now claims the notice was insufficient as to Wilson because it does not assert a claim against the latter or state an intention to hold them liable.

While the sufficiency of the notice may be open to dispute, whether or not the claim of plaintiff in its federal court suit was provable or the notice to Robinson and Wilson sufficient is not material here. Where an asserted claim is compromised in good faith it is not essential to the enforceability of the compromise agreement that the compromised claim be a valid or subsisting obligation. (*Hamilton* v. *Oakland School Dist.*, 219 Cal. 322, 329 [26 P.2d 296].) Therefore the trial court was correct in refusing the requested instruction and overruling the motion for nonsuit on this point.

Other points raised on this appeal involve questions of fact to be proved on a new trial and require no discussion here.

The appeal from the order denying defendant's motion for a new trial is dismissed. The order denying the motion for judgment notwithstanding the verdict is affirmed and the judgment reversed.

Jefferson, J., and Bishop, J., pro tem.,* concurred.

---

* Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.