CRAB BOAT OWNERS ASSOCIATION, Robert N. Miller, Larry Collins, and John T. Tarantino Plaintiffs,

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST, the Hartford, Hartford Financial Services Group Inc., and Does 1 through 50 inclusive, Defendants.

No. C 03–05417 MHP.

United States District Court, N.D. California.

July 20, 2004.

E. Gerard Mannion, Mannion & Lowe, San Francisco, CA, for Plaintiffs.

Ann K. Johnston, Denise A. Ruelas, Berger Kahn Shafton Moss Figler Simon, Novato, CA, for Defendants.

### MEMORANDUM AND ORDER

#### Motion to Dismiss

PATEL, Chief Judge.

On October 30, 2003, plaintiffs Crab Boat Owners Association, Robert Miller, Larry Collins, and John Tarantino filed a complaint alleging that Hartford Insurance Company's refusal to defend plaintiffs in a separate lawsuit before this court—namely *Dooley et al. v. Crab Boat Owners Association et al.*, C 02–0676 MHP—constituted a breach of its insurance contract and a violation of the contract's implied covenant of good faith and fair dealing. The underlying action involves a combination of antitrust and intentional tort claims arising out of plaintiffs' alleged attempts to restrict trade and to fix the price of Dungeness crab at artificially high levels. Defendants have now filed a motion to dismiss plaintiffs' complaint. Having read the parties' papers and considered their arguments, the court hereby enters the following memorandum and order.

### BACKGROUND

Defendants insured plaintiffs under a standard Comprehensive General Liability (CGL) policy, which protects against bodily injury or property damage caused by "occurrences." Def.'s Mot., Ex.1.A, at 1. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Def.'s Mot., Ex.1.A, at 11. The relevant coverage period ran from June 27, 2001, until June 27, 2002, during which plaintiffs became subject to the underlying suit which this action concerns. On February 1, 2002, a commercial fisherman, John Dooley, and his crewmembers sued Crab Boat Owners Association (CBOA) and several other Bay area fishermen's associations for conspiring to fix the price of crab and for threatening and retaliating against members of the trade whose continued fishing interfered with the price-fixing scheme. *See* Def.'s Mot., Ex. 2. The third-party plaintiffs filed an amended complaint on June 27, 2002, repeating the earlier allegations and alleging additional costs and lost revenue resulting from defendants' conduct. *See* Def.'s Mot., Ex. 3.

Plaintiffs are currently litigating the underlying action as defendants in this court. On October 30, 2003, plaintiffs filed a complaint with the California Superior Court,

demanding that defendants comply with their contractual duty to defend by indemnifying plaintiffs for damages incurred in the underlying lawsuit. Defendants removed the action to federal court on diversity jurisdiction grounds and filed a motion to dismiss for failure to state a claim on which relief can be granted, asserting that plaintiffs' alleged conduct does not constitute an "occurrence" within the meaning of the policy. *See* Def.'s Mot., at 3. Defendants also moved to dismiss Hartford Financial Services Group (HFSG) and "The Hartford" as parties for defective summons and service of summons. *Id.* at 3–4. In support of this portion of their motion, defendants introduced evidence showing that HFSG was not a party to the insurance agreement and that "The Hartford" is not a legal entity and therefore not subject to suit. *Id.*

*LEGAL STANDARD*

I.  *Motion to Dismiss*

"A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (internal quotes omitted). Nonetheless, dismissal is proper in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). A motion to dismiss will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus. Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986). In deciding a motion to dismiss, a court accepts all material allegations in the complaint as true and construes all evidence in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). The court need not, however, accept as true conclusory allegations, unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

Although the court is generally confined to considering the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in determining whether dismissal is proper without transforming the motion into one for summary judgment. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). In deciding such motions, the court may also consider facts that are properly the subject of judicial notice. *See MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986). Judicially noticeable facts include those that are not subject to reasonable dispute because they are either generally known within the court's jurisdiction or can be determined by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed.R.Evid. 201.

II.  *Duty to Defend*

An insurer's duty to defend is broader than its duty to indemnify. *See CNA Cas. of Cal. v. Seaboard Sur. Co.,* 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986). When the dispute concerns the scope of coverage, not the effect of an exclusion, the burden of proof rests initially on the insured to show that an event is a risk of the type the policy covers. *Royal Globe Ins.. Co. v. Whitaker,* 181 Cal.App.3d 532, 538, 226 Cal.Rptr. 435 (1986). Because the final decision regarding coverage often depends on factual determinations made at trial, an insurer must defend a suit which potentially seeks damages within the policy coverage. *See Gray v. Zu-*

*rich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal. Rptr. 104, 419 P.2d 168 (1966). Whether the insurer owes a duty to defend turns initially on comparing the allegations in the complaint with the terms of the policy. *See Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). An insurer must also consider facts extrinsic to the pleadings. *See Gray,* 65 Cal.2d at 276–77, 54 Cal.Rptr. 104, 419 P.2d 168. If the complaint, taken together with extrinsic evidence, alleges only intentional torts that would compel a finding of intentional wrongdoing, the insurer is relieved of its defense duty. *See Gray,* 65 Cal.2d at 275 n. 15, 54 Cal.Rptr. 104, 419 P.2d 168.

## DISCUSSION

According to the CGL policy terms, an event is covered only if it occurs by accident *and* results in bodily injury or property damage. Def.'s Mot., Ex. 1.A, at 1, 11. Plaintiffs do not dispute that the alleged injuries to economic advantage recited in claims one through seven of the underlying complaint—the gravamen of the action—are not covered by the policy, because neither the type of damages (lost business opportunities) nor the nature of the conduct alleged (necessarily non-accidental) fall within the policy's terms. *See* Def.'s Mot., Ex. 3, at 14–25. Plaintiffs assert, however, that defendants have a duty to defend them because count nine in the underlying action alleges property damage arising from plaintiffs' trespass.[1] *See* Pl.'s Opp'n, at 7. Plaintiffs also raise two other ill-defined objections to the mo-

tions to dismiss: 1) that defendants have information from sources other than the complaint that establishes a duty to defend and 2) that defendants are alter egos and co-conspirators and therefore liable for the acts of each of the others. *See* Pl.'s Opp'n, at 5. These issues will be considered in turn.

### I. *Potential for Liability*

In its claim for trespass to chattels, the underlying complaint alleges only intentional acts committed in furtherance of intended consequences. *See* Def.'s Mot., Ex.3. However, since, theoretically, liability for trespass can arise not only from wilful, deliberate acts but also from *negligent* acts or intentional acts producing unintentional consequences, plaintiffs insist that they are potentially liable for damages covered under the policy.[2] *See* Pl.'s Opp'n at 7–8. Plaintiffs also argue in the alternative that, even had the trespass count not invoked the possibility of liability for unintentional conduct, either the ability of the third-party plaintiff to amend his complaint to include covered causes of action or the fact that plaintiffs are vicariously liable for the actions of their agents serve as independent grounds establishing defendants' duty to defend. *Id.*

### A. *Effect of Third–Party Plaintiffs' Trespass to Chattels Claim*

▇ Plaintiffs allege that the underlying complaint's allegation of trespass, which can refer to intrusions either premeditated and malicious *or* accidental and well-mean-

---

1. If one or more claims in a complaint generates a duty to defend, an insurer is obligated to defend against all claims alleged in the action, both covered and uncovered. *See Upper Deck Co. LLC v. Federal Ins. Co.,* 358 F.3d 608, 612 (9th Cir.2004).

2. The underlying complaint's eighth claim for conversion, which, like the trespass claim,

alleges property damage arising out of intentional conduct, cannot trigger a duty to defend, because California courts have concluded that conversion cannot be an "occurrence" or "accident" within the meaning of insurance policies. *See Collin v. American Empire Co.,* 21 Cal.App.4th 787, 814, 26 Cal.Rptr.2d 391 (1994).

ing, opens the possibility that plaintiffs could be found liable in the underlying action for unintentional behavior causing property damage, which would fall under the insurance policy's definition of "occurrence." *Id.* California's jury instructions on trespass do not vary according to the theory alleged in the complaint. *See* Judicial Council of California, *Civil Jury Instructions* 2000 (West Publishing 2004). In other words, the pleading of intentional trespass will not restrict the jury to finding liability only on a showing of intentional conduct; a showing of negligence can also prove liability. *See Staples v. Hoefke,* 235 Cal.Rptr. 165, 171, 235 Cal.Rptr. 165 (1987); *Roberts v. Permanente Corp.,* 188 Cal.App.2d 526, 530–31, 10 Cal.Rptr. 519 (1961).

The potential liability that triggers the duty to defend arises out of the odd chance that plaintiffs could be found liable for trespass on account of negligence.[3] *See Montrose,* 6 Cal.4th 287 at 301, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (asserting that the duty to defend is established if the evidence does not permit the court to eliminate the possibility that the insured's conduct falls within the coverage of the poli-

cy). True, the conduct described in the language of the underlying complaint, which alleges "wilful," "malicious" trespass, can hardly be characterized as an accident. Deposition testimony from the third-party plaintiff indicates that he believes that the lines to 647 of his crab pots were deliberately severed by a knife or other sharp implement. *Id.* at 21. However, the bare facts alleged (i.e., one of the defendants was seen sailing, even though he had suspended his fishing operation, in the area of the buoy lines at the time they were cut), along with the theory of liability pled (trespass), permit the jury to decide plaintiffs are liable for purely accidental conduct. *See Montrose,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (holding that an insurer must defend unless the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage). Certainly, negligence is not always synonymous with accident. *See American Int'l Bank v. Fidelity & Deposit Co.,* 49 Cal. App.4th 1558, 1572–73, 57 Cal.Rptr.2d 567 (1996). However, in the cases in which potentially negligent actions were found not to be accidents for the purposes of

**3.** If the decision on policy coverage depended only on the distinction between intentional conduct with intended consequences and intentional conduct with unintended consequences, California law would probably immunize defendants from having to defend. There is some debate about whether, under California law, intentional acts leading to unintentional consequences constitute an "accident" for the purposes of interpreting the meaning of "occurrence" in insurance policies. *Compare Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.,* 51 Cal.2d 558, 563–64, 334 P.2d 881 (1959) (holding that an accident is an unexpected, unforeseen, undesigned consequence and therefore an insured's mens rea and motive are relevant to determining whether his intentional conduct can constitute an accident), *with Merced Mutual Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 47–49, 261 Cal.Rptr. 273 (1989) (holding that

where an insured intended all of the acts resulting in the unexpected consequences, the event is not an accident merely because the insured did not intend such consequences). Recent cases are nearly unanimous in finding that intentional acts causing unintentional damage are not accidents. *See e.g., Mendez,* 213 Cal.App.3d at 48, 261 Cal.Rptr. 273 (noting that the argument that the requisite intent applies not to one's actions, but to their consequences, "has been repeatedly rejected by the appellate courts"); *see also Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1365 (9th Cir.1991); *Swain v. California Cas. Ins. Co.,* 99 Cal.App.4th 1, 10, 120 Cal.Rptr.2d 808 (2002). Although the California Supreme Court has not weighed in on the conflict between the older and newer lines of cases by affirming the appeals' courts, neither has it rejected these recent holdings, despite having ample opportunity to do so.

insurance coverage, the conduct was of a sort that could not occur fortuitously. *See id.* (negligent misrepresentation requires an intent to induce reliance); *Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583, 596, 79 Cal.Rptr.2d 134 (1998) (sexual acts cannot be engaged in by accident). Other cases have found that unanticipated events caused by the insured's negligent or reckless behavior are accidents covered under insurance policies. *See Wells Fargo Bank & Union Trust Co. v. Mut. Life Ins. Co. of New York*, 66 F.2d 890, 895 (9th Cir.1933) (finding that a decedent's contribution to his own carbon monoxide asphyxiation through inadequately ventilating his garage did not bar recovery by his heirs). In the underlying action, plaintiffs' alleged conduct (cutting crabpot lines) could have occurred inadvertently even if the complaint does not allege as much.

■ Had Dooley's complaint been limited to claims that could only be proven through a finding of intentional actions, the gap that here creates the insurer's duty to defend would be closed. However, the complaint, as currently pled, raises the narrow possibility for liability for negligent trespass. Under California law, this slight possibility suffices to trigger defendants' duty to defend. *See Montrose*, 6 Cal.4th 287 at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

### B. *Plaintiffs' Alternative Arguments*

The court must emphasize that its holding depends entirely on the presence in the underlying complaint of the trespass claim and the breadth of that tort under California law. If Dooley were to drop his trespass claim, defendants' duty to defend would no longer be implicated. The alternative grounds that plaintiffs press as necessitating a duty to defend—*viz.*, the possibility that the underlying complaint might be amended to allege specific facts and the notion that plaintiffs' supposed derivative liability transforms the nature of their alleged conduct from intentional to unintentional—are unavailing.

■ The Federal Rules of Civil Procedure permit a plaintiff to amend his complaint, if the court grants leave or if the opposing party stipulates, at any time before the action concludes. *See* Fed. R.Civ.P. 15(a). Theoretically, then, an insurer's obligation to defend would always remain undetermined until final judgment. However, although an insured is entitled to a defense if the underlying complaint might be amended to create a potential liability covered under the policy, speculation about how a third-party plaintiff "might amend its complaint at some future date" is insufficient to catalyze an insurer's duty to defend. *Upper Deck Co. LLC v. Federal Ins. Co.*, 358 F.3d 608, 615 (9th Cir.2004).

In the relevant underlying complaint, an amendment specifying negligent acts would be inconsistent with the third-party plaintiff's primary allegations, and it would conceivably strip the antitrust and intentional tort claims of their persuasive force. *See Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 114, 120 Cal.Rptr.2d 827 (2002) (holding that plaintiff impermissibly speculates when surmising an amendment to the third-party plaintiff's pleading that would "in effect substitute one cause of action for another"). Although the trespass claim in the current complaint allows a jury to hold plaintiffs liable for negligent or mistaken interference with property, absent this claim, it could not be inferred solely from the facts already alleged that such an amendment would be forthcoming.

■ Plaintiffs' second contention—that the vicarious basis for their liability in the underlying action alters how the court should characterize the nature of their alleged conduct—rests on an erroneous reading of *American States v. Borbor*, 826

F.2d 888 (9th Cir.1987). In *Borbor*, the court concluded that an insurer could not rely on California Insurance Code, section 533 (which disallows coverage for the civil consequences of an insured's civil acts) in refusing to indemnify an unoffending plaintiff vicariously liable for the acts of her business partner. *See id.* at 895. Although, according to *Borbor*, section 533 does not preclude an insurer from contracting to indemnify a vicariously liable individual, neither does it prevent an insurer from exempting such an individual from coverage if expressly included in the policy. *See id.* at 894. The ruling has no effect on the scope and meaning of defendants' insurance policy, which is the issue confronting the court here. *See Allstate v. Salahutdin*, 815 F.Supp. 1309, 1312 (N.D.Cal.1992) (commenting that a coverage provision may be more restrictive than section 533) (Lynch, J.).

## II. *Other Issues*

Although the court decides this motion on the basis that the underlying complaint's trespass claim opens the possibility for plaintiffs to be found liable for conduct covered under the policy, two remaining allegations raised by the plaintiffs require comment.

### A. *Extrinsic Evidence*

▆ Plaintiffs allege that defendants have information from sources outside the complaint that establishes their duty to defend plaintiffs. While it is true that extrinsic information may give rise to a duty to defend, the relevant facts must be known by the insurer and reveal the possibility of coverage. *See Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1114, 44 Cal.Rptr.2d 272 (1995). An insured cannot "trigger the duty to defend by speculating about extraneous facts regarding potential liability." *See Upper Deck Co.*, 358 F.3d at 615.

Plaintiffs' assertion that extrinsic evidence exists establishing a duty to defend strikes the court as an empty boast. Plaintiffs make only conclusory statements that dispositive information is available to the defendants, and they do not specify what such information might be or where it might be discovered. *See* Pl.'s Opp'n at 7. Plaintiffs are no clearer in enlightening the court as to whether they themselves know the content of the putative evidence or whether defendants possess the information exclusively. Defendants have asked for greater detail about the information plaintiffs are presumed to know and have offered to withdraw the motion to dismiss if plaintiff files an amended complaint describing the extrinsic evidence. *See* Def.'s Mot., Ex. A. Plaintiffs rejected defendants' request. *See* Def.'s Mot., Ex. B. Without production of any specific evidence revealing defendants' obligation to defend, this court has no basis for believing that such evidence exists. Moreover, there is no evidence that defendants are aware of or are concealing evidence potentially prejudicial to their case.

### B. *Joint Venture Allegations*

The court disregards plaintiffs' assertion that Hartford Insurance Company of the Midwest (the issuer of plaintiffs' policy), Hartford Financial Services Group (its separately incorporated parent) and "The Hartford" (a registered service mark) are alter egos jointly liable for each others' acts. Plaintiffs' reason for attempting to bring in these unrelated parties, one of which is not even a legal entity, baffles the court and deserves no further indulgence. Having taken judicial notice of materials submitted with defendants' motion to dismiss, *see* Def.'s Mot., Exs. 4–13, the court finds that neither HFSG nor 'The Hartford' is a proper party to this action.

*CONCLUSION*

For the foregoing reasons, the court hereby GRANTS defendants' motion to dismiss HFSG and The Hartford as defendants in this action. The court hereby DENIES defendants' motion to dismiss the claims for breach of contract and breach of the implied covenant of good faith and fair dealing. If third-party plaintiffs were to certify to the court that they are proceeding with their trespass claim in the underlying action solely on a theory of intentional conduct with the intent to injure and do not rest any part of their claim on a theory of negligence or facts that would support negligence, defendants would appear to have no duty to defend and the motion to dismiss could be GRANTED in its entirety.

IT IS SO ORDERED.