[Civ. No. 27992. Fourth Dist., Div. Two. Apr. 21, 1983.]

MORENO VALLEY UNIFIED SCHOOL DISTRICT, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
MORENO VALLEY EDUCATORS ASSOCIATION,
Real Party in Interest.

COUNSEL

Gibson, Dunn & Crutcher, Kenneth D. Hoffman, Elizabeth A. Grimes and Patrice I. Kopistansky for Petitioner.

Dennis M. Sullivan, Jeffrey Sloan and Elaine Feingold for Respondent.

A. Eugene Huguenin, Jr., Raymond L. Hansen, Charles R. Gustafson and Michael R. White for Real Party in Interest.

OPINION

**MORRIS, P. J.**—This case presents an important issue concerning the authority of California's Public Employment Relations Board (referred to as PERB, or the Board). Specifically, whether the Board's determination that a public employer's unilateral implementation of changes in employment conditions during the pendency of the statutory impasse procedure constitutes a per se unfair labor practice is a reasonable interpretation of the Educational Employment Relations Act (EERA). A second issue is whether the Board exceeded its jurisdiction in finding that the public employer's failure to participate in good faith in the statutory impasse procedure with regard to the effects of certain employment decisions violated the EERA.

I.

The first collective bargaining agreement between the Moreno Valley Unified School District (District) and the Moreno Valley Educators Association (Association), representing about 320 certificated employees, was due to expire on August 31, 1978. Negotiations for a new agreement began on March 23, 1978. The parties met on 16 separate occasions through September 15, but were unable to reach agreement on most issues. The school year began on September 11. Four days later the parties mutually agreed they were at an impasse, and requested that the Board appoint a mediator pursuant to the statutory impasse procedure. (Gov. Code, § 3548 et seq.) The Board appointed a mediator on September 20.

Nevertheless, on or shortly after September 15,[1] the District unilaterally implemented the terms of its "last best offer."

---

[1] The precise date is unclear from the record.

Mediation proceeded in accordance with the statutory impasse procedure. On October 2, 1978, the Association filed an unfair labor practice charge against the District, alleging violations of Government Code section 3543.5, subdivisions (a), (b), (c) and (e).

A formal hearing was held on February 28, 1979. The PERB hearing officer issued his proposed decision, concluding, inter alia, that it was a per se unfair practice for a public employer to implement unilateral changes in terms and conditions of employment subject to the scope of representation prior to the exhaustion of the statutory impasse procedures; this practice was held to violate section 3543.5, subdivisions (a), (b), (c) and (e).[2]

The District filed exceptions to the hearing officer's proposed decision and the matter came before the Board. From a de novo review of the record, the Board adopted the hearing officer's statement of facts, and partially adopted his reasoning and conclusions of law. "[F]ollowing a declaration of impasse, a unilateral change regarding a subject within the scope of negotiations prior to exhaustion of the impasse procedure is, absent a valid affirmative defense, *per se* an unfair practice," the Board stated. (*Moreno Valley Educators Assn.* v. *Moreno Valley Unified School Dist.* (1982) P.E.R.B. Dec. No. 206, p. 5.) The Board concluded that some changes made during the pendency of the impasse procedure concerned subjects within the scope of representation, while others did not. The Board affirmed the hearing officer's conclusion that it was an unfair practice for the District to fail to bargain regarding the *effects* on employees of the elimination of certain positions, although the decisions to eliminate those positions were exclusively a management prerogative. The Board issued an order, the major features of which required the District to cease and desist from the practices adjudicated unfair, and to "make whole" employees denied remuneration they would have received absent the District's unilateral actions. (*Id.*, at pp. 5-16.)

The District filed a petition for a writ of extraordinary relief from the Board's decision pursuant to Government Code section 3542. This court stayed enforcement of the Board's order pending determination of the matter on its merits.

---

[2]Government Code section 3543.5 provides: "It shall be unlawful for a public school employer to:

"(a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

"(b) Deny to employee organizations rights guaranteed to them by this chapter.

"(c) Refuse or fail to meet and negotiate in good faith with an exclusive representative.

"(d) Dominate or interfere with the formation or administration of any employee organization, or contribute financial or other support to it, or in any way encourage employees to join any organization in preference to another.

"(e) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with Section 3548)."

## II.

Appellate review of PERB orders has two aspects. First, findings of the Board on questions of fact, including ultimate facts, are treated as conclusive if supported by substantial evidence. (Gov. Code, § 3542, subd. (c); *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1, 12 [154 Cal.Rptr. 893, 593 P.2d 838].) Here, the record consists entirely of a joint stipulation and exhibits.

Second, "the relationship of a reviewing court to an agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, is generally one of deference (*Ford Motor Co.* v. *NLRB* (1979) 441 U.S. 488, 495 [60 L.Ed.2d 420, 426-427, 99 S.Ct. 1842]). The Supreme Court stated in *Ford* that the delegation of those duties to agencies such as the NLRB was the intent of Congress, and thus deference to their findings is entirely appropriate since they are 'tasks lying at the heart of the Board's function' (*id.,* at p. 497 [60 L.Ed.2d at p. 428]). The Court noted that the board's view should be accepted if it is 'not an unreasonable or unprincipled construction of the statute' (*id.*). Even though the board's judgment is 'subject to judicial review . . . if its construction of the statute is reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute' (*id.*)." (*Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1012 [175 Cal.Rptr. 105].)

As the above passage reflects, to the extent the language and provisions of the National Labor Relations Act—and those of California's Agricultural Labor Relations Act—parallel those of the Educational Employment Relations Act, cases construing the former are persuasive in interpreting the latter. (*Public Employment Relations Bd.* v. *Modesto City Schools Dist.* (1982) 136 Cal.App.3d 881, 895-896 [186 Cal.Rptr. 634].)

## III.

The District makes several arguments in support of its contention that the Board erred in adopting a per se rule regarding unilateral changes in employment conditions by employers during statutory impasse.

First, the District argues that the Board acted in an "arbitrary and capricious" fashion in that it specifically rejected the hearing officer's rationale for applying a per se test to the employer's conduct, yet "[i]ncredibly, . . . *did not offer any alternative rationale.*" (District's italics.)

This contention is simply mistaken. The Board's rationale for its decision is set forth at pages 4 and 5 of its decision in this case. Briefly stated, it is that an employer's implementation of unilateral changes in employment conditions prior to completion of impasse procedures frustrates the EERA's purpose of achieving mutual agreement through mediation.

Next, it is argued that "since a strike or work stoppage after impasse but before completing post-impasse procedures does not constitute a *per se* unfair practice, it therefore follows that implementation of a last best offer after impasse does not constitute a *per se* unfair practice." The thrust of this argument is that it is unfair to treat "employee self help" (in the form of strikes) by a totality-of-conduct test[3] while condemning "employer self-help" (in the form of unilateral changes in employment conditions) as per se unlawful. This argument inverts the reasoning of the hearing officer in this case, who found that because employee organizations could not use "self-help" during impasse, neither should employers be allowed to do so.

Both the District's argument and, as PERB recognized, the hearing officer's rationale, are premised on a flawed equation of employee strikes with unilateral changes in employment conditions made by employers. It is manifest that a unilateral change in employment conditions is not the same thing as a strike, at any stage of an employment dispute. The management equivalent of a strike is a lockout. (*Wasco County* v. *Am. Fed. of S., Cty. & Mun. Emp.* (1977) 30 Ore.App. 863 [569 P.2d 15, 19]; see *American Ship Bldg.* v. *Labor Board* (1965) 380 U.S. 300, 314-315 [13 L.Ed.2d 855, 865, 85 S.Ct. 955].)

Strikes and unilateral changes in employment conditions have very different consequences for the labor dispute resolution process. A strike, like a lockout, has the necessary result that neither labor nor management achieves its goals. A lockout or strike is designed to exert economic pressure on the other party to resolve disputed issues. In sharp contrast, a unilateral imposition of terms by an employer signals an end to the mutual dispute resolution process regarding

---

[3]The Board explained the distinction between the totality of conduct and per se tests in *Stockton Teachers Assn. CTA/NEA* v. *Stockton Unified School Dist.* (1980) P.E.R.B. Decision No. 143, page 22:

" 'The standard generally applied to determine whether good faith bargaining has occurred has been called the "totality of conduct" test. [Citation.] This test looks to the entire course of negotiations to determine whether the employer has negotiated with the requisite subjective intention of reaching an agreement. There are certain acts, however, which have such a potential to frustrate negotiations and to undermine the exclusivity of the bargaining agent that they are held unlawful without any determination of subjective bad faith on the part of the employer. The latter violations are considered *per se* violations. [Citation.] An outright refusal to bargain or a unilateral change in the terms and conditions of employment are two examples of *per se* violations of the duty to negotiate. . . .' "

those terms. The employer loses incentive to participate in the dispute resolution process, because it has imposed terms it has deemed satisfactory.[4]

The District's third argument is that the Board "failed to distinguish between pre-impasse bargaining and statutory impasse procedures." Under the National Labor Relations Act, the District stresses, unilateral employer action on subjects of negotiations taken before impasse is reached is per se unfair, while unilateral action after impasse is not. (See *Labor Board* v. *Katz* (1962) 369 U.S. 736 [8 L.Ed.2d 230, 82 S.Ct. 1107].)

However, this argument assumes a correspondence between federal law and the EERA which does not exist. Unike the EERA, the NLRA has no statutory impasse procedure, failure to participate in which is explicitly made an unlawful labor practice.

EERA's impasse procedure is set forth at Government Code sections 3548 through 3548.8. The sections provide that either the employer or the employee organization may declare that an impasse exists; if PERB determines that is the case, it must appoint a mediator, who must meet with the parties in an effort to resolve the differences. Should the mediator not effect a settlement within 15 days of his appointment, PERB must appoint a factfinding panel on request of either party; the factfinding panel must conduct its operations according to statutory guidelines. Under certain circumstances, binding arbitration may occur.

Government Code sections 3543.5, subdivision (e) and 3543.6, subdivision (d)[5] explicitly make it unlawful for a public school employer or an employee organization, respectively, to refuse to participate in good faith in the statutory impasse procedure.

Recognizing that federal law differed significantly in having no statutorily prescribed impasse procedures, the Board in this case rejected the District's

---

[4]The District points out that it is sometimes possible to accommodate for unilateral changes ultimately withdrawn, as with wage increases paid retroactively. This does not negate the impact on the ongoing dispute resolution process, however.

[5]Government Code section 3543.6 provides: "It shall be unlawful for an employee organization to:

"(a) Cause or attempt to cause a public school employer to violate Section 3543.5.

"(b) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

"(c) Refuse or fail to meet and negotiate in good faith with a public school employer of any of the employees of which it is the exclusive representative.

"(d) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with Section 3548)."

analogy to federal law, reasoning as follows: "The assumption of unilateral control over the employment relationship prior to exhaustion of the impasse procedures frustrates the EERA's purpose of achieving mutual agreement in exactly the same ways that such conduct frustrates that purpose when it occurs at an earlier point. See *San Mateo County Community College District* (6/8/79) PERB Decision No. 94. The impasse procedures of EERA contemplate a continuation of the bilateral negotiations process. Mediation remains fundamentally a bargaining process, albeit with the assistance of a neutral third party." (*Moreno Valley Educators Assn.* v. *Moreno Valley Unified School Dist.*, *supra*, PERB Dec. No. 206, pp. 4-5.)

█ The Board's conclusion that impasse under the EERA is, unlike NLRA impasse,[6] a continuation of mutual dispute resolution efforts and not a signal that economic pressure tactics may begin, is a reasonable interpretation of the statutory scheme and not clearly erroneous.

"For the reasons set forth in *San Mateo County Community College District*, *supra*, we find that following a declaration of impasse, a unilateral change regarding a subject within the scope of negotiations prior to exhaustion of the impasse procedure is, absent a valid affirmative defense, *per se* an unfair practice." the Board stated. (*Moreno Valley Educators Assn.* v. *Moreno Valley Unified School Dist.*, *supra*, PERB Dec. No. 206, at p. 5.) The Board's *San Mateo* decision set forth four reasons why unilateral changes in employment conditions by an employer prior to statutory impasse warranted *per se* treatment:

"One reason unilateral changes are disfavored is their destabilizing and disorienting impact on employer-employee affairs. *Fibreboard Paper Products Corp.* v. *NLRB* (1964) 379 U.S. 203, 211. . . . An employer's single-handed assumption of power over employment relations can spark strikes or other disruptions at the work place. Similarly, negotiating prospects may also be

---

[6]The Supreme Court has recently clarified that under the NLRA, impasse is "a temporary deadlock or hiatus in negotiations 'which in almost all cases is eventually broken, through either a change of mind or the application of economic force.'" (*Charles D. Bonanno Linen Service* v. *NLRB* (1982) 454 U.S. 404, 412 [70 L.Ed.2d 656, 664, 102 S.Ct. 720].) The high court accepted the NLRB's view that, during NLRA impasse, "bargaining is temporarily replaced by economic warfare." (*Id.*, at p. 412, fn. 8 [70 L.Ed.2d at p. 664].)

The District directs our attention to *American Fed. of Television & Radio Artists* v. *N.L.R.B.* (D.C.Cir. 1968) 395 F.2d 622, which found that an impasse could be declared although bargaining continued on some issues. To the extent that this is not superseded by the Supreme Court's more recent statements on the nature of impasse, we think it reflects only a need for some accommodation under the NLRA's either-or scheme, which allows for just two states, bargaining and impasse. This need is not present in EERA's more precisely structured scheme, which provides for bargaining, statutory impasse and, if mediation does not resolve the dispute, a post-impasse stage.

damaged as employers seek to negotiate from a position of advantage, forcing employees to talk the employer back to terms previously agreed to. This one-sided edge to the employer surely delays, and may even totally frustrate, the process of arriving at a contract.

"A second reason to prohibit unilateral changes of employment conditions is to protect employer-employee freedom of choice in selecting an exclusive representative. Employer unilateral actions derogate the representative's negotiating power and ability to perform as an effective representative in the eyes of employees. . . .

"Third, the rule against unilateral changes promotes negotiating equality consistent with the statutory design. EERA compels negotiations with an exclusive representative (section 3543.5), gives employee organizations negotiating rights prior to final budget-making by management (section 3543.7), establishes public notice procedures to prevent behind-closed-doors decision-making (section 3547), and, provides for neutral third party mediation and fact-finding when impasse has occurred (sections 3548, 3548.3). . . . [A]n employer's unilateral act prior to negotiations inherently tips the negotiating balance so carefully structured by the various provisions of the EERA. In short, the bilateral duty to negotiate is negated by the assertion of power by one party through unilateral action on negotiable matters.

"Finally, when carried out in the context of declining revenues, an employer's unilateral actions may also unfairly shift community and political pressure to employees and their organizations, and at the same time reduce the employer's accountability to the public. This type of potential competition is unique to the public sector . . . ." (*San Mateo Community College Dist.*, *supra*, at pp. 14-16.)

Since "impasse" under EERA's statutory scheme denotes a continuation of the labor-management dispute resolution process, while "impasse" under federal law indicates a halt to that process, we think the Board reasonably determined that the considerations warranting per se treatment of unilateral changes at the negotiation stage also warranted per se treatment of such changes prior to the exhaustion of the statutory impasse procedure.

Thus, the Board reasonably interpreted the statute in finding a per se violation of the statutory duty of employers to participate in good faith in the impasse procedure.[7]

---

[7]The District also argues that the Board's decision "is against the weight of judicial authority in other jurisdictions," citing to three cases.

In *Mt. Vernon Police Assn.* v. *Bd. of Estimate* (1967) 1 Pub. Bargaining Cases (CCH)

The specific unilateral actions the Board found unlawful were: "(1) elimination of stipends for counselors, for Reading Resource, Educationally Handicapped (EH) and Educable Mentally Retarded (EMR) teachers, and for high school special education and reading teachers; (2) elimination of extra duty stipends at the junior high school for sports supervision, special education, journalism, year book, drama, reading, vocal music and band; (3) increase in class size for grades 1-3; (4) reduction in preparation time for grades 4-6, and (5) failure to bargain over the negotiable effects of the District's decision to eliminate the Miller-Unruh teaching positions and the positions of assistant football coach (2 positions)."

In addition to holding the above practices violated the duty to participate in good faith in the impasse procedure, the Board found that the practices violated section 3543.5, subdivision (c), which makes it unlawful for a public school employer to fail or refuse to "meet and negotiate" in good faith with an exclusive employee representative.

Government Code section 3540.1, subdivision (h) defines "meeting and negotiating" as "meeting, conferring, negotiating, and discussing by the exclusive representative and the public school employer in a good faith effort to reach agreement on matters within the scope of representation and the execution . . . of a written document incorporating any agreements reached . . . ." There is no mention of "impasse."

"Impasse," as defined in section 3540.1, subdivision (f), "means that the parties to a dispute over matters within the scope of representation have reached a point in meeting and negotiating at which their differences in positions are so substantial or prolonged that future meetings would be futile."

---

¶ 10,074, a New York trial court denied an injunction to prevent unilateral changes in employment conditions. The statute the trial court interpreted was less than three months old at the time of the decision, and the court lacked the benefit of an expert agency decision in the case because of its injunctive posture. In *Montgomery County Council* v. *Bd. of Ed. of Mont.* (1976) 227 Md. 343 [354 A.2d 781], also an injunctive action, the Maryland Court of Appeals held that an employer did not act in bad faith when it unilaterally instituted a wage increase during impasse. The court noted that under the NLRA, a per se rule was sometimes applied, but concluded without any analysis that such a rule was "not appropriate in this context." (354 A.2d at p. 785, fn. 1.) We find both cases unpersuasive.

The District has also cited to *Council 25 and Local 893 (AFSCME)* v. *Mich. Employment Relations Comm.* (1980) 1979-81 Pub. Bargaining Cases (CCH) ¶ 38,171. However, since the report of the decision includes headnotes but omits the court's opinion, we are unable to consider it.

These cases may be profitably compared with *Wasco County* v. *American Fed. of State, etc.* (1980) 46 Ore.App. 859 [613 P.2d 1067], in which it was held the state's employment relations board could properly interpret the statutory impasse procedure to make it per se unlawful for a public employer to implement its last proposed wage increase during impasse.

The statutory scheme unmistakably comprehends that an impasse may be declared only when meeting and negotiating have come to an end. This is further borne out by the fact that failure to meet and negotiate in good faith, and failure to participate in good faith in the statutory impasse procedure, are made *separate* unlawful practices for both employers and employee organizations. If participation in the meeting and negotiating process included participating in the impasse procedure, sections 3543.5, subdivision (e) and 3543.6, subdivision (d) would be wholly superfluous.

We think the Board's conclusion that the specified practices violated the employer's duty to meet and negotiate in good faith was clearly erroneous. The Board further found that the District's unilateral actions violated section 3543.5, subdivision (b), which makes it unlawful to deny to employee organizations rights guaranteed by EERA, and subdivision (a), which proscribes employer interference with employee exercise of rights. These violations were expressly predicated on the concurrent violation of the duty to meet and negotiate in good faith, and therefore cannot stand.

In light of our conclusion that the start of impasse denotes the end of "meeting and negotiating" in the formal sense, the Board's use of the term "negotiation" and its variants in its opinion was overbroad. With regard to the fifth specified practice found unfair in this case, we construe the phrase "failure to bargain over the negotiable effects of the District's decision" as indicating a failure to participate in the impasse procedure in good faith regarding the effects of such decisions. This construction is supported by the evident sense of the Board's opinion taken as a whole.

## IV.

The District separately assails the Board's finding that it failed to participate in the impasse procedure in good faith regarding the effects of its unilateral decision to eliminate the Miller-Unruh teaching positions and the positions of assistant football coach.

First, the District alleges that the question of whether the District failed to act in good faith regarding the (negotiable) effects of its (nonnegotiable) decision to eliminate the relevant positions was not part of the unfair practice charge brought by the Association, and that the District had no notice of this issue.

"Actions before the [NLRB] are not subject to the technical pleading requirements that govern private lawsuits. [Citation.] The charge need not be technically precise as long as it generally informs the party charged of the nature of the alleged violations." (*Indus., Technical and Prof. Emp. Div.* v.

*N.L.R.B.* (9th Cir. 1982) 683 F.2d 305, 307-308; see *N.L.R.B.* v. *Carilli* (9th Cir. 1981) 648 F.2d 1206, 1210.)

In this case the District was informed of the nature of the alleged violations. The charge alleged that the District "has refused to participate in good faith in the impasse procedure . . .; engaged in a course of conduct designed to . . . implement unilateral changes in mandatory subjects of bargaining, retaliate against employees by increasing hours of work and reducing pay and benefits . . . , and use[d] the impasse procedure as a subterfuge for unilateral implementation of matters on which the [District] has maintained an unyielding stance . . . as evidenced by [the following actions]: . . . (j) . . . (l) The job titles of Miller-Unruh teacher and reading resource teacher were dropped, *although the duties continued to be assigned* . . . . (4) The paid position of assistant athletic director was unilaterally eliminated and the duties assigned to the athletic director *resulting in a unilateral increase in hours of work with no increase in pay.* . . . (10) Paid positions at the high school of junior varsity coach, assistant softball coach and girl's track coach were unilaterally eliminated *and their duties assigned to other employees."* (Italics added.)

Further, the joint stipulation entered into by the District and the Association states that among the issues presented in the case are:

"A. Whether it is an unfair practice for a school district to implement changes in matters subject to the scope of representation after impasse has been reached on such matters and under the circumstances set forth in this stipulation of facts.

"B. Whether any of the changes set forth below involve matters outside the scope of representation and, if not, whether any such changes implemented by a school district constitute an unfair practice."

Thus, the question of the effects of the District's unilateral decisions to eliminate certain positions was adequately placed in issue by the Association's unfair practice charge.

The District, however, argues that the unfair practice charge could not have presented the issue of "effects" of unilateral elimination of positions because the term "effects" in this context has a narrow meaning not encompassed in the charge. The District here relies on the Board's prior decision in *San Mateo Community College Dist., supra,* PERB Decision No. 94. There, the Board said: "Although an employer may be free to exercise its management prerogative to close all or part of its business for financial reasons, the employer must still give the employee organization notice and opportunity to

negotiate over the effects of the decision; for example, the order and timing of employee layoffs, severance payments, relocation, retraining, re-employment rights, and so on." (PERB Dec. No. 94, *supra,* at p. 13.)

From this passage, the District reasons that it might be obliged to negotiate and participate in the impasse procedure regarding the effects of decisions to eliminate positions "in the sense of . . . whether the individuals involved should be offered other positions, whether they would receive any severance pay, whether they would be assigned any other duties, whether they would be relieved of any other duties, and the like. However, this was not the issue presented in the charge," and the District has no similar obligation regarding other "effects."

The District's argument ignores both the context and the language of the Board's *San Mateo* "effects" dictum. When an employer closes a business for financial reasons, then the "effects" at issue necessarily include those listed by the Board, and clearly do *not* include effects of the sort placed in issue in this case, such as the effect of an increase in workload for remaining employees. And the District's assumption that the "effects" mentioned in the *San Mateo* decision are the only "effects" for which a duty might exist is belied by the Board's use of the phrase "for example" preceding its list of effects. It is clear that the Board intended that list to be merely illustrative and not exclusive.

It is next argued that the Board's finding that the District "fail[ed] to bargain over the negotiable effects of [its] decision to eliminate the Miller-Unruh teaching positions and the positions of assistant football coach" is not supported by substantial evidence.

This argument seems to assume that the finding of failure to negotiate refers to the preimpasse period, an assumption that undoubtedly proceeds from PERB's overbroad use of the terms "bargaining" and "negotiating" to denote the statutory duty to participate in good faith in the multilateral impasse procedure (see discussion, part III, *supra*). As we have concluded above, however, the findings that the District committed per se unfair practices in this case can only apply to the failure to participate in good faith in the statutory impasse procedure. That the unilateral changes complained of were in fact made by the District prior to the exhaustion of the statutory impasse procedure is clearly reflected in the joint stipulation of the parties. Since the changes were made unilaterally prior to mediation regarding the effects of such changes, it necessarily follows, applying the Board's per se test, that the District violated section 3543.5, subdivision (e).

█ Finally, the District alleges that regarding "effects," it was obligated to give the Association "notice and an opportunity to bargain" but need not bargain before implementing unilateral changes. Our attention is directed to three cases decided under the NLRA.

*Shell Oil Co.* (1964) 149 N.L.R.B. 305 dealt with whether an employer had in fact given sufficient notice of a unilateral change to enable bargaining to take place, and had adequately indicated a willingness to bargain. The decision did not address the question of whether notice and opportunity to bargain alone were sufficient. Similarly, *International U., United Auto. A & A. Imp. Wkrs.* v. *N.L.R.B.* (D.C.Cir. 1972) 470 F.2d 422 held that the employer had in fact negotiated about the effects issues, and did not discuss the issue the District raises.

In *Pierce Governor Co., Inc.* (1967) 164 N.L.R.B. 97, affd., *International Union, United A., A., & A. Imp. Wkrs.* v. *N.L.R.B.* (D.C.Cir. 1968) 394 F.2d 757), it was held that the employer had not violated its duty to bargain in good faith regarding the effects of a decision to move a factory to another town. The *NLRB* stated inter alia that "[a]lthough bargaining . . . dwindled considerably after March 1975 [and the new plant became available for occupancy in April], we regard that as an indication that bargaining was approaching an impasse when both parties became more or less frozen in their positions . . . ." (*Id.*, at pp. 101-102.) The use of the phrase "approaching an impasse" as the source for a rule that an employer need give only notice and an opportunity to bargain to meet its duty to negotiate strains the passage beyond what it can bear.

To prevail on this argument, the District would have to show that the Board's determination that more than mere notice and opportunity are required to meet the duty to negotiate in good faith is clearly erroneous. The District would next have to show that the same standard must necessarily apply to the statutory duty to participate in good faith in EERA's impasse procedure, which we have seen has no federal equivalent. It has done neither.

## V.

The Board found five specified practices of the District to have violated the EERA. As we have discussed above, each of the practices may properly be found to have violated the public employer's statutory duty to participate in the impasse procedure in good faith as set forth in Government Code section 3543.5, subdivision (e). The findings that the practices also violated section 3543.5, subdivision (c), the duty to negotiate in good faith, and, predicated on this finding, also violated section 3543.5, subdivisions (a) and (b), proscribing interference with employee rights and employee organization rights, cannot

stand for the reason that the Board too broadly interprets the statutory phrase "meeting and negotiating."

Standing alone, the finding that the District violated section 3543.5, subdivision (e) is adequate to support all aspects of the Board's remedial order in this case, with the exception of part A, paragraphs two and three of the order (found on pp. 15-16 of the Board's decision). These portions of the order provide that the District shall cease and desist from unilateral action on matters within the scope of representation prior to the exhaustion of the statutory impasse procedure, in violation of the employees' right to select an exclusive representative, and in violation of the Association's right to represent its members. The deletion of these two paragraphs, however, does not materially alter the District's obligations under the order, since similar duties are imposed on the District with regard to its violation of subdivision (e).

The requested writ is denied, and the stay of enforcement of the Board's order is dissolved.

McDaniel, J., and Rickles, J., concurred.