[No. B048803. Second Dist., Div. Seven. Jan. 29, 1991.]

INGLEWOOD TEACHERS ASSOCIATION, Petitioner, v. PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent; INGLEWOOD UNIFIED SCHOOL DISTRICT, Real Party in Interest.

768

COUNSEL

Schwartz, Steinsapir, Dohrmann & Sommers and Margo A. Feinberg for Petitioner.

John W. Spittler and Jennifer Chambers for Respondent.

Grant & Duncan, Artis C. Grant, Jr., Donna Lopez and Tamara Smith Stevenson for Real Party in Interest.

OPINION

**WOODS (Fred), J.**—Petitioner and appellant Inglewood Teachers Association (Association) challenges a decision of respondent, the California Public

Employment Relations Board (PERB). The issue presented by this appeal is the appropriate legal standard for imputing the conduct of a supervisory or managerial employee to a public school employer, in this case, the real party in interest, the Inglewood Unified School District (District). We affirm PERB's decision.

## FACTUAL AND PROCEDURAL SYNOPSIS

### 1. *Statement of The Facts*

Lawrence Freeman is the principal of Inglewood High School, one of the schools in the District. On or about February 3, 1987, Eunice Curry, an active member of the Association, and a teacher employed by the District, had a conversation with Freeman, in which he told her that he was going to "get [his] attorney," and that her "group" was "going to be in trouble." The conversation took place on the front steps of the school after the lunch break, and students were present. According to Curry's testimony, Freeman was angry because he believed that Curry had told the union president that Freeman was threatening substitute teachers.

Freeman thereafter hired an attorney, Lynn Pineda, to draft a complaint which was filed in superior court on March 9, 1987. Freeman did not discuss the lawsuit with either the superintendent or the governing board of the District prior to filing the complaint, nor at any time afterward. Neither the governing board nor the superintendent either requested or authorized Freeman to file the lawsuit.

The caption to the complaint referred to Freeman by his name, and included no reference to his status as a principal. The first paragraph of the complaint identified Freeman as "an administrator, assigned as principal of Inglewood High School . . . ." The complaint, as originally filed, sought damages for libel and slander, intentional infliction of emotional distress, fraud, interference with contract, and conspiracy.

Freeman named as defendants nine District teachers who were actively involved in the Association: Eunice Curry, Robert Dillen, Vernon McKnight, Martha Morales, John Nollan, Gene Ray, Delores Ridgeway, Shirley Mims, and Carolyn Galloway. In addition, Freeman named as defendants Alma Davis and Jacques Bernier, Association staff persons, and the Association itself, as well as the California Teachers Association.

The complaint sought damages for statements and acts which are protected by the Educational Employment Relations Act (EERA, i.e., Gov.

Code, § 3540 et seq.[1]), including: the distribution of a circular regarding threats to teachers, filing of PERB charges, sending a letter to the school board regarding unsafe working conditions at Inglewood High School and collectively speaking out about the working conditions under Freeman's administration.

Jacques Bernier, who thought that he was being sued by the District, was the first of the defendants to be served with the complaint, on March 13, 1987. Bernier showed the complaint to the Association's legal staff, who believed the suit to have probably emanated from Freeman, as opposed to the District.

Although Mr. Pineda (Freeman's attorney) did not request the District to serve copies of the lawsuit on the teachers named as defendants, his process server delivered copies of the summons and complaint for distribution to the teachers to Ethel Murphy, an administrative secretary in personnel. The process server did not indicate who the plaintiff was in the lawsuit.

Murphy accepted the copies, prepared envelopes for all of the teachers named in the lawsuit, and stamped "personnel services," in the upper left hand corner, in case the document could not be delivered due to a teacher's absence. Murphy placed copies of the lawsuit into the inter-District mail for eight of the teachers. The ninth teacher, Robert Dillen, was out on industrial leave, so Murphy sent him a copy of the complaint to his home address. Murphy accomplished these tasks without being directed to do so by any other employee or agent of the District. It was Murphy's normal routine to accept and distribute such documents.

In fact, the District policy regarding acceptance of legal documents for service had been breached by Murphy. Rex Fortune, the superintendent, had earlier directed his staff that no such documents were to be accepted by them on behalf of District employees.

The teachers named as defendants retrieved the complaint from their school mail boxes on or about March 18, 1987, except for Dillen, who received a copy in his mail box at home on the same date. Teachers received copies of the complaint through no other means. Upon examining the complaint, at least two teachers, including Curry, believed the lawsuit to have emanated personally from Freeman, while other teachers believed that the District must have authorized it. None of the teachers called the District to ascertain whether it had authorized the lawsuit. However, Dillen

---

[1] Unless otherwise noted, all statutory references are to the Government Code.

discussed the lawsuit with two members of the governing board of the District, Ernest Shaw and Rosemary Benjamin.

## 2. Statement of the Case

On February 4, 1987, the Association filed an unfair practice charge alleging that the District violated section 3543.5 by discriminating and retaliating against employees, because of their exercise of protected activities. The Association filed a first amended unfair practice charge on March 5, 1987, adding new allegations of discrimination against employees. A second amended unfair practice charge was filed on April 14, 1987, adding that the District discriminated against Association members by its agent's action in filing a lawsuit against them. PERB's general counsel issued a complaint on portions of the unfair practice charge on August 3, 1987, and on the same day, dismissed other allegations in the second amended unfair practice charge.

On December 14, 1987, the Association moved to amend the complaint to add a new theory of retaliation. The administrative law judge (ALJ) granted the motion. On February 10, 1988, pursuant to a settlement agreement reached by the parties, portions of the complaint were withdrawn by the Association.

The PERB complaint, in its final version, contained the following allegations: (1) the District, through its principal, Lawrence Freeman, retaliated against Association members by filing a civil lawsuit naming them as defendants in superior court on March 9, 1987, in violation of the EERA, section 3543.5, subdivisions (a) and (b); (2) the District unilaterally changed a policy regarding the dismissal of unit members from extra-duty coaching assignments; (3) the District unilaterally changed the method of paying teachers for extra-duty work assignments; (4) the District, through Lawrence Freeman, unlawfully threatened unit member Eunice Curry because of her union activity, in violation of the EERA, section 3543.5, subdivision (a) and derivatively, section 3543.5, subdivision (b); and, (5) the District unlawfully dismissed two employees from their extra-duty coaching assignments.

The District filed an answer to the PERB complaint, in which it denied that it had violated EERA and that Freeman was its agent.

An evidentiary hearing was held before Administrative Law Judge Manuel Melgoza on December 14-16, 1987, and February 8-10, 1988. The ALJ issued his proposed decision on January 25, 1989, finding that the District, through Freeman, had violated the EERA, section 3543.5, subdivisions (a)

and (b) by filing a civil lawsuit against the Association, and some of its members. As a remedy for the latter violation, the ALJ ordered the District to pay petitioner's legal costs in defending the lawsuit.

The ALJ also found that the District violated the EERA by dismissing the coaches from their extra-duty assignment and by threatening a teacher with future retaliation for her exercise of union activities. Finally, the ALJ found that the District violated EERA by unilaterally changing the past practice for removal of teachers from extra-duty assignments. The District's exceptions to the proposed decision were filed on or about March 8, 1989.

On February 15, 1990, the PERB issued PERB decision No. 792, generally affirming the decision of the ALJ, except insofar as he determined that Freeman acted as the District's agent when he filed the civil lawsuit.

Petitioner filed a timely writ petition.[2]

## DISCUSSION

The Association contends that PERB, did not apply the appropriate standard in determining when a public school employer is responsible for the acts of its supervisors under the EERA and that PERB's factual findings are not supported by substantial evidence.

## I. *The Definition of Agency Used by PERB Is Not Clearly Erroneous*

Under the EERA, it is an unlawful labor practice to "[i]mpose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter." (§ 3543.5, subd. (a).) In the instant case, PERB was called upon to decide whether a school district should be liable for the threats and reprisals of a principal in suing employees for engaging in protected activities. PERB concluded that Lawrence Freeman, the principal of Inglewood High School, was not acting as the agent of the District when he sued the teachers and the Association.

The Association argues that PERB, in contradiction to PERB precedent and the accepted concepts of agency set forth in labor law and California statutory and common law, redefined the test for determining when a school district would be responsible for the acts of its managers and supervisors such as a school principal. The Association further argues that PERB did not proceed in the manner required by law in its interpretation and application of agency principles and thus, pursuant to Code of Civil Proce-

---

[2] Such a writ is designated a writ for extraordinary relief. (§ 3542, subd. (b).)

dure section 1094.5, subdivision (b), the appropriate inquiry in this case is whether there has been a prejudicial abuse of discretion by PERB.

Code of Civil Procedure section 1094.5 is in the chapter on writs of mandate. For a writ of review, the appropriate standard is: "The review upon this writ cannot be extended further than to determine whether the inferior tribunal, Board, or officer has regularly pursued the authority of such tribunal, Board or officer." (Code Civ. Proc., § 1074.)

■ " '[T]he relationship of a reviewing court to an agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, is generally one of deference,' [citation] and PERB's interpretation will generally be followed unless it is clearly erroneous." (*Banning Teachers Assn.* v. *Public Employment Relations Bd.* (1988) 44 Cal.3d 799, 804 [244 Cal.Rptr. 671, 750 P.2d 313].) We likewise conclude that PERB's interpretation of agency principles is subject to the clearly erroneous standard of review.

## A.  PERB Precedent

■ The key PERB case on the issue of agency is *Antelope Valley Community College District* v. *CSEA and Its Chapter 374* (July 18, 1979) PERB Dec. No. 97 [3 PERC [¶] 10098 at p. 312]. However, *Antelope Valley* was decided by two board members, Chairman Gluck and member Gonzales, who agreed that an agency did exist based on the facts of that case, but did not agree as to what rule should be used to determine agency in a labor relations context under the EERA. Thus, as was noted in the instant PERB decision, the case is not precedent. The Association implicitly recognizes this fact as it urges this court to adopt the reasoning of Gluck rather than that of Gonzales.

Gluck, who wanted to follow National Labor Relations Act (NLRA, i.e., 29 U.S.C. § 151 et seq.) precedent, urged that even though the EERA does not include the term agent in the definition of employer, since a school district is managed through a hierarchy of officials, "the question of agency authority should be resolved by determining *whether the employees had just cause to believe* the supervisor or manager was acting with the apparent authority of the employer . . . . even though the actions were not expressly authorized or ratified by the employer." (Italics added.) (3 PERC [¶] 10098 at pp. 314-315.) Gluck also found support for his position in California common law, which provides that the acts of an agent within his actual or apparent authority are binding on the principal. (*Id.,* at p. 314.)

Recognizing that there is a difference between the public and private sectors, Gonzales was not convinced that historically accepted labor rela-

tions principles of agency must be applied to EERA cases. In advocating more of a case-by-case approach, Gonzales urged that: "It is reasonable that under some circumstances employees may perceive their employer as responsible for such decisions and actions, regardless of whether the governing board itself is directly involved. Under other circumstances, such a perception, may be unreasonable, and it may thus be inappropriate to attribute these actions to the employer." (3 PERC [¶] 10098 at p. 318.)

In this case, the majority of three of the four members of PERB concluded that the Gonzales approach was the more reasoned one and decided to exercise caution and restraint in their analysis of the case under the apparent authority doctrine. The majority determined that under either approach, there was insufficient evidence in the record to support a finding of agency.

### B. NLRA Precedent

The Association argues that even though the EERA does not include the term agent in the definition of employer, the NLRA standard is applicable since the legislative intent of the two regulatory schemes is the same and that we should look at the EERA as a whole and give effect to the entire statute. Both statutes generally recognize the right of employees to join organizations which may serve as their exclusive representative in employment relations. (Compare § 3540 and 29 U.S.C. § 151.) However, there are significant differences between the two statutes. The EERA is more specific in that it is directed at the public school systems in California while the NLRA is aimed at the private sector throughout the nation.

■ Courts have noted that: "to the extent the language and provisions of the [NLRA]—and those of California's Agricultural Labor Relations Act—parallel those of the [EERA], cases construing the former are persuasive in interpreting the latter. (*Moreno Valley Unified School Dist.* v. *Public Employment Relations Bd.* (1983) 142 Cal.App.3d 191, 196 [191 Cal.Rptr. 60].) However, at times, PERB has even stated that not only is NLRA precedent not controlling, it may not even be instructive. (*Elsinore Valley Education Association, CTA/NEA* v. *Lake Elsinore School District* (Dec. 18, 1987) PERB Dec. No. 646, at p. 31 [12 PERC [¶] 19012].)

The EERA defines a public school employer as "the governing board of a school district, a school district, a county board of education or a county superintendent of schools." (§ 3540.1, subd. (k).) On the other hand, under the NLRA, an employer "includes any person acting as an agent of the employer, directly or indirectly, . . ." (29 U.S.C. § 152(2).) Furthermore, the NLRA provides that: "In determining whether any person is acting as

an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." (29 U.S.C. § 152(13).) In the decision being reviewed here, PERB attached significance to these definitions and concluded that NLRA precedent should not be controlling in determining the definition of agent to be used under the EERA.

Citing *Vista Verde Farms* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 307 [172 Cal.Rptr. 720, 625 P.2d 263], the Association noted that the federal standard has been applied under the Agriculture Labor Relations Act (ALRA). However, under the ALRA, application of the NLRA standard is statutorily mandated. (Lab. Code, § 1148.) The fact that it is not mandated under the EERA supports PERB's conclusion that the Legislature meant for PERB to decide what appropriate standard of agency should be applied in the context of the EERA.

In addition to noting the inclusion of the term agent in the definition of employer under the NLRA, Gonzales also noted that under the NLRA, supervisors had no organization rights themselves, but under the EERA, supervisors had the right to organize, making it less likely that rank and file employees would automatically perceive employer involvement in a supervisor's conduct. (*Antelope Valley Community College District* v. *CSEA and Its Chapter 374, supra*, PERB Dec. No. 97 [3 PERC [¶] 10098 at p. 318].)

The Association also argues that an agent should be included in the definition of employer under the EERA as it can be seen in Education Code sections 44681 and 44860 and California Code of Regulations, title 5, sections 5550-5551 that the Legislature has acknowledged that districts act through their principals. We disagree with this contention. ■ Since the Legislature is deemed to be aware of the content of its own statutory enactments, it is a reasonable inference that the Legislature would have included the term agent in the definition of employer under the EERA if it wanted school districts perpetually exposed to liability for any unfair labor practice committed by an agent of a school district.

C. *Respondeat Superior*

Next, the Association argues that if the labor law standard is inapplicable, then the doctrine of respondeat superior (Civ. Code, § 2338) should be applied. ■ Under the doctrine of respondeat superior, " '[A]n employer's liability extends to torts of an employee committed within the scope of his employment. [Citation.] This includes willful and malicious torts as well as negligence.' . . . Whether a tort was committed within the scope of

employment is ordinarily a question of fact." (*John R.* v *Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447 [256 Cal.Rptr. 766, 769 P.2d 948].)

■ Other than quoting from the dissenting opinion in the instant PERB decision, the Association does not offer any convincing argument as to why the tort doctrine of respondeat superior should be applied to an unfair labor practice committed under the EERA.

In *Antelope Valley*, Gluck's test of whether the employees had just cause to believe that the agent was acting with the apparent authority of the employer is not a strict liability test. (*Antelope Valley Community College District* v. *CSEA and its Chapter 374, supra*, PERB Dec. No. 97 [3 PERC [¶] 100097, at p. 314].) Even Gluck noted that a finding of apparent authority still required a finding of reasonable reliance and a change in position in order to impose liability. (*Ibid.*)

The instant PERB decision rejected the application of respondeat superior in the labor law context since the principal justification for the application of the doctrine is the fact that an employer may spread the risk of losses caused by the torts of employees through insurance and carry the cost thereof as part of the costs of doing business. (*John R.* v. *Oakland Unified School District, supra*, 48 Cal.3d 438, 450.) PERB noted that although the underpinnings of Freeman's lawsuit arose out of his employment, he sought to vindicate purely personal interests based on theories of interference with contractual rights, libel, slander and conspiracy. PERB then concluded that the type of unfair labor practice claimed in this case was not within the normal range of risks for which costs could be spread and insurance obtained. Since courts do not always distinguish between the agency theories of actual or ostensible authority and the tort doctrine of respondeat superior (*Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 521 [154 Cal.Rptr. 874]), we are unconvinced that PERB erred in determining that the tort doctrine of respondeat superior should not be applied in the labor law context making it automatic that a public school district would be liable for all unfair labor practices committed by its agents.

D. *Burden of Proof*

PERB concluded that the ALJ had incorrectly placed the burden of proof on the District to rebut an agency relationship. PERB determined that the Association had the burden of proving the existence of ostensible or apparent authority by establishing that the District represented that the agency existed, that the Association relied on that representation and that the Association changed its position as a result of that reliance. (*Yanchor* v. *Kagan* (1971) 22 Cal.App.3d 544, 549 [99 Cal.Rptr. 367].) The Association

argues that the standard should be one of perception, not reliance, as this factual situation is not one in which an aggrieved party is seeking to enforce a contract against a principal.

■ Under the EERA, the charging party, i.e., the Association, has the burden of proving the complaint by a preponderance of the evidence. (Cal. Code Regs., tit. 8, § 32178.) ■ " 'The law indulges in no presumption that an agency exists but instead presumes that a person is acting for himself and not as agent for another.' " (*K. King and G. Shuler Corp.* v. *King* (1968) 259 Cal.App.2d 383, 393 [66 Cal.Rptr. 330] disapproved on another point in *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 290 [137 Cal.Rptr. 635, 562 P.2d 316].) Generally, the existence of an agency relationship and the extent of the authority of an agent are questions of fact, and the burden of proving agency, as well as the scope of the agent's authority, rests upon the party asserting the existence of the agency and seeking to charge the principal with the representation of the agent. (*California Viking Sprinkler Co.* v. *Pacific Indem. Co.* (1963) 213 Cal.App.2d 844, 850 [29 Cal.Rptr. 194].) ■ Therefore, we conclude that PERB did not err in placing the burden of proving agency on the Association.

■ Since a finding of the existence of an agency is generally a factual inquiry, determining its existence by the circumstances of each case comports with the general principles of agency. Not being convinced that PERB had to apply NLRA precedent or the doctrine of respondeat superior, we conclude that PERB's decision to determine the existence of agency on a case-by-case approach on the basis of whether the employees could reasonably believe that the supervisor was acting within the scope of his or her employment when the supervisor committed an unfair labor practice is not clearly erroneous.

II. *Substantial Evidence Supports PERB's Findings*

PERB found that the Association failed to prove that the District was actually involved in the subject lawsuit, that the teachers could reasonably believe the District was involved or that the District had knowledge of and ratified the lawsuit.

■ The Association contends that PERB's ultimate finding, that the teachers and the Association did not reasonably believe Freeman to be an agent of the District, is not supported by substantial evidence. The Association contends that the facts only support a finding that the teachers would reasonably believe Freeman was acting as an agent of the District, that the record is clear that the District had knowledge of the lawsuit and that the record is clear that the District did not disavow Freeman's action in bringing the lawsuit.

■ Appellate courts must accept PERB's factual findings, including ultimate facts, as conclusive if they are supported by substantial evidence on the record as a whole. (§ 3542, subd. (c); *Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 617 [224 Cal.Rptr. 631, 715 P.2d 590].) Under the substantial evidence test, courts may not reweigh the evidence and may not consider that an alternate finding may be equally reasonable, or even more reasonable, than the finding made by PERB. (*Regents of University of California* v. *Public Employment Relations Bd., supra,* 41 Cal.3d 601, 617.)

Actual authority is that which "a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." (Civ. Code, § 2316.) Ostensible or apparent authority is that which "a principal, intentionally or by want or ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.)

■ PERB found that although Freeman was an actual agent of the District, the Association did not prove by a preponderance of the evidence that he was acting within the scope of his authority when he filed the lawsuit. PERB noted that the Association produced no evidence that the District expressly authorized Freeman to file the lawsuit.

There is no showing in the record that the District actually authorized Freeman to file the lawsuit. Freeman testified that he retained an attorney on his own and did not discuss the lawsuit with either the superintendent or the governing board of the District before or after filing it. Nor is there any indication of past instances in which Freeman pursued legal action on behalf of the District from which his authority to pursue the action against the teachers and the Association might be implied. (*Thompson* v. *Machado* (1947) 78 Cal.App.2d 870, 877 [178 P.2d 838].)

PERB also found that the evidence did not justify a finding that Freeman had ostensible or apparent authority to file the lawsuit. Since such authority must be established through the acts of the principal, apparent authority requires a showing that the District represented that it authorized the lawsuit and that the teachers' had a reasonable perception that such representation was true. (*Yanchor* v. *Kagan, supra,* 22 Cal.App.3d 544, 549.)

The only indicia of District involvement in the lawsuit was the use of the school mail system to distribute the complaint to the teachers named as defendants in the suit. Ethel Murphy, the secretary who distributed the complaint through the District mail system, testified that no one in administration directed her to send the documents involved in the lawsuit or otherwise knew of its existence. She further testified that in sending the com-

plaints through the school mail system, she was following her normal routine. The superintendent testified that her acceptance of such legal documents for "service" to District employees was in breach of District policy.

The evidence at the hearing was conflicting as to whether the recipients of the copies of the complaint believed that the lawsuit emanated from Freeman individually or as an agent of the District. Even for those defendants who believed that the District authorized Freeman's lawsuit, they did not inquire into the nature and extent of the assumed agent's authority as persons dealing with assumed agents are required to do. (*La Malfa* v. *Piombo Bros.* (1945) 70 Cal.App.2d 840, 844 [161 P.2d 964].) **(11)** Mere surmise as to the authority of an agent is insufficient to impose liability on the principal. (*Harris* v. *San Diego Flume Co.* (1891) 87 Cal. 526, 527-528 [25 P. 758].)

Although Dillen, one of the defendant teachers, testified that he spoke to two board members about the lawsuit, the record is devoid of any indication about what was discussed. There is nothing in the record to indicate that Dillen asked the board members if Freeman was acting for the board or that he told them what the suit was about. Thus, the record support's PERB's finding that the Association failed to prove that the District was actually involved in the lawsuit.

PERB found that the teachers could not reasonably believe that Freeman was acting as an agent of the District in filing the lawsuit. In this situation, PERB is the ultimate fact finder. (*McPherson* v. *Public Employment Relations Bd.* (1987) 189 Cal.App.3d 293, 304 [234 Cal.Rptr. 428].) Since reasonableness is essentially a fact question and is particularly within the province of the fact finder, we are precluded from overturning a decision based upon reasonable inferences drawn from the evidence.

The Association argues that since the District did not file an exception to the ALJ's finding that Freeman's threat to Curry was an unfair labor practice attributable to the District, PERB's finding that Curry could not reasonably believe that the lawsuit was authorized by the District leads to an absurd result. The Association also argues that in reaching its decision regarding the subject of reasonable belief, PERB failed to consider the important fact that the contents of Freeman's complaint contained allegations pertaining to the defendants having raised the subject of working conditions at the school.

The more reasonable inference, however, is that Freeman clearly acted as a principal rather than as an individual when he threatened Curry on school property in front of the students. Moreover, although Curry had some concerns with the lawsuit having emanated from the District, she testified

that she thought it came from Freeman. It is clear that PERB did consider the contents of Freeman's complaint, but concentrated on the relief sought, not the factual setting. As already stated, we cannot determine that PERB's findings are not supported by substantial evidence just because alternate findings were possible.

In order to prove that the District condoned or ratified the lawsuit, the Association had to prove that the district had knowledge of the lawsuit.[3] (*Rakestraw* v. *Rodriguez* (1972) 8 Cal.3d 67, 74 [104 Cal.Rptr. 57, 500 P.2d 1401].) Both Freeman and his attorney testified that they did not discuss the lawsuit with the governing board. Although the superintendent believed that he had seen a copy of the complaint, he did not recall having read the details of the complaint, and he testified that he had never informed the board of its existence. As already discussed, although Dillen discussed the lawsuit with two board members, he did not indicate what was discussed. Moreover, there is no indication in the record that those two members informed the other members of the board about the lawsuit. Since the Association did not prove that the District knew of the details of the lawsuit, there was no reason for the District to disavow the suit.

### DISPOSITION

The PERB decision is affirmed. Costs of this writ proceeding to PERB and the District.

Lillie, P. J., concurred. Johnson, J., concurred in the judgment.

---

[3] The District had notice of the lawsuit when the unfair practice charge was amended to allege agency; however, once the PERB complaint was issued, the District denied its involvement in the lawsuit in its answer.